October 18, 1994
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-2385

ROBERT C. BEAUCHAMP,

Petitioner, Appellee,

v.

PAUL MURPHY, THE SUPERINTENDENT OF THE
OLD COLONY CORRECTIONAL CENTER,

Respondent, Appellant.

ERRATA SHEET

The opinion of this court issued on September 26, 1994, is
amended as follows:

On page 13, delete the first full paragraph and replace with the

following paragraph:

"In the state court proceeding, the Department of
Correction also provided an affidavit from the chief of its
fugitive apprehension unit making similar contentions; but
this, too, was essentially a litigation document and did not
suggest that Washburn had any personal involvement in making
the decision to deny credit to Beauchamp. It is questionable
whether either the arguments made in the state's brief or the
Washburn affidavit amount to anything more than a kind of
"post hoc rationale" that courts do not normally accept as a

basis for appraising administrative action. NLRB v. Yeshiva

Univ., 444 U.S. 672, 675 n.22 (1980). In any event, neither

document suggests any individualized attempt to target
Beauchamp."

October 4, 1994 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-2385

ROBERT C. BEAUCHAMP,

Petitioner, Appellee,

v.

PAUL MURPHY, THE SUPERINTENDENT OF THE
OLD COLONY CORRECTIONAL CENTER,

Respondent, Appellant.

ERRATA SHEET

The opinion of this Court, issued on September 26, 1994, is
amended as follows:

On page 13, line 1 of footnote 2, continued from page 12, replace
"context" with "contest".

On page 17, second line from bottom, replace "But" with "By".

On page 19, line 8 of second full paragraph, replace "does" with
"do".

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-2385

ROBERT C. BEAUCHAMP,

Petitioner, Appellee,

v.

PAUL MURPHY, THE SUPERINTENDENT OF THE
OLD COLONY CORRECTIONAL CENTER,

Respondent, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. A. David Mazzone, Senior U.S. District Judge]

Before

Selya, Circuit Judge,

Bownes, Senior Circuit Judge,

and Boudin, Circuit Judge.

William J. Duensing, Assistant Attorney General, with whom Scott

Harshbarger, Attorney General, was on brief for appellant.

Joseph H. Zwicker with whom Massachusetts Correctional Legal

Services was on brief for appellee.

September 26, 1994

BOUDIN, Circuit Judge. This appeal presents the

question whether Massachusetts was constitutionally obliged,

under the circumstances of this case, to give an escaped

convict credit against his Massachusetts sentence for time

spent in an Illinois jail resisting extradition back to

Massachusetts. The district court in a habeas corpus

proceeding held that the Constitution required such a credit.

We disagree, and reverse.

The facts are straightforward. On February 23, 1973, a

jury found Richard Beauchamp guilty of second degree murder

in Massachusetts. He received a life sentence but, under

Massachusetts law, was nevertheless eligible for parole after

14 years. Scarcely a year later, on April 29, 1974,

Beauchamp was released from prison on a 12-hour furlough. He

fled from Massachusetts. Beauchamp thereafter lived "in

various places under different names with false

identification and largely by his wits and deception."

United States ex rel. Beauchamp v. Elrod, 1987 WL 15164, *2

(N.D. Ill. 1987).

On July 6, 1981, Beauchamp was arrested on federal

charges in California. Shortly thereafter, Massachusetts

learned of the arrest and notified the federal authorities of

the Commonwealth's desire to have Beauchamp returned to

Massachusetts prison. After serving a nine-month sentence in

California on federal charges, Beauchamp waived his

-2-

objections to extradition to Illinois where federal mail

fraud charges had been lodged against him. While there, he

was convicted and sentenced to a brief term of imprisonment.

After that sentence expired, he appeared on February 17,

1983, in Illinois state court on an Illinois misdemeanor

charge of deceptive practice.

Illinois dismissed its misdemeanor charge on March 11,

1983, anticipating Beauchamp's extradition to Massachusetts.

In April the governor of Illinois issued a rendition warrant,

but Beauchamp refused to waive extradition. Instead he

brought a state habeas corpus action challenging his

extradition on a variety of inventive grounds. The state

habeas corpus petition was denied on November 10, 1983, but

by an appeal and then a rehearing petition Beauchamp delayed

a final disposition until November 1985. Beauchamp v. Elrod,

484 N.E.2d 817 (Ill. App. 1985).

Beauchamp then began a federal habeas corpus proceeding.

In Illinois, Beauchamp claimed that the Massachusetts murder

had been committed at the CIA's behest and that Massachusetts

prison officials had thereafter connived at Beauchamp's

escape from Massachusetts prison. The district court held an

evidentiary hearing but then denied relief, concluding that

the facts alleged by Beauchamp would not in any event furnish

a defense to extradition. United States ex rel. Beauchamp v.

Elrod, supra, 1987 WL 15164, *2.

-3-

On August 7, 1987, Beauchamp was finally returned to

Massachusetts. He pleaded guilty to a separate charge of

escape from prison, but no separate sentence was imposed.

Beauchamp then began a campaign to obtain credit, against his

Massachusetts second-degree murder sentence, for a four-year

period (March 11, 1983, to August 7, 1987) that he had spent

in the Illinois jail while resisting extradition to

Massachusetts. Although credit would not reduce his formal

sentence, which was for life imprisonment, credit would

reduce the wait before Beauchamp was eligible for parole.

The Massachusetts authorities were prepared to give

Beauchamp credit for his very brief period in Illinois

custody after his extradition challenges had failed so that

Massachusetts was free to take him into custody. The

authorities refused his request for any further credit, and

Beauchamp then sought judicial review. The superior court

granted Beauchamp's request for full credit but the Supreme

Judicial Court reversed, holding that no credit was due for

the time spent in Illinois resisting extradition.

Commonwealth v. Beauchamp, 595 N.E.2d 307 (Mass. 1992).

On October 1, 1993, Beauchamp commenced the present

action for habeas corpus in the district court. 28 U.S.C.

2254. In a thoughtful decision rendered on November 18,

1993, the district court granted the writ, ordering the state

to allow the 1,574 days' credit sought by Beauchamp. The

-4-

court ruled that to deny the credit would unconstitutionally

burden Beauchamp's right to contest extradition. In the

alternate, the court held that denial of the credit was

unconstitutional retaliation by the state.

On this appeal, the Commonwealth first claims that

Beauchamp did not adequately exhaust his state remedies. In

the district court, as here, Beauchamp has invoked both due

process and equal protection concepts. Due process underlay

Beauchamp's argument that the Commonwealth has

unconstitutionally burdened his right of access to the courts

and impermissibly retaliated against him. The equal

protection claims were of two kinds: first, that

Massachusetts provides credit for time spent contesting

extradition to some extradited persons but not to prison

escapees; and second, that denial of such credit favors

affluent fugitives over those who cannot make bail.

In arguing a failure to exhaust state remedies, the

Commonwealth singles out the equal protection claim that

Massachusetts grants credit to some extradited persons and

withholds it from others based on irrational criteria. Under

Rose v. Lundy, 455 U.S. 509 (1982), Beauchamp's federal

petition may be dismissed if he failed to present to the

state courts any of the federal claims now asserted. The

district court must dismiss such "mixed petitions," "leaving

the prisoner with the choice of returning to state court to

-5-

exhaust his claims or of amending or resubmitting the habeas

petition to present only exhausted claims to the district

court." Id. at 510.

In his brief to the Supreme Judicial Court, Beauchamp

had a separate section devoted to "state and federal

guaranties of due process," whose adequacy (for exhaustion

purposes) the Commonwealth does not challenge, and a section

on "federal equal protection," which makes the indigency

argument briefly but adequately. The equal protection

argument based on irrational classification was set forth in

a prior section, under the heading "state constitution--equal

protection," which begins with a reference to "the state

guaranty of equal protection." As the last paragraph of this

section--after the supposedly irrational classifications have

been described--the brief concludes:

Over and above state constitutional
requirements governing by which branch
and on what basis the rule proposed [by
the Commonwealth denying credit] can be
adopted, the rule violates state and
Federal Constitutional constraints on
how, why, and upon whom a denial of
liberty can be imposed. These are the
constraints of Federal equal protection
and due process guaranties under both
Constitutions.

It is possible to read this final paragraph, as the

district court apparently did, to be a federal equal-

protection attack on the classifications just criticized at

length in the same section of Beauchamp's brief. The more

-6-

natural meaning of the paragraph may be to read it as a

transition to the two sections that follow which, as

mentioned above, address "federal equal protection" (where

the indigency issue is discussed) and "state and federal

guaranties of due process" (where the access to the courts

issue is discussed).

However this may be, we have no intention of dismissing

the case under Rose v. Lundy. The substance of the

irrational classifications argument was amply explained in

Beauchamp's state brief and his criticisms were not premised

on any peculiarity of language in the Massachusetts

Constitution or any unusual state court precedent. The

Supreme Judicial Court can hardly have been misled merely

because the reference to federal equal protection occurred at

the end of the argument instead of the beginning. Had the

caption of the argument read "federal and state constitution-

-equal protection," the substance would have been exactly the

same.

Rose v. Lundy assures that state courts have the chance

to pass on federal constitutional issues before federal

courts intrude on the state criminal process. Where the

state court has not fairly been apprised of a constitutional

argument, exhaustion is required. See Nadworney v. Fair, 872

F.2d 1093 (1st Cir. 1989). But in this context "substance

rather than form" is critical, 872 F.2d at 1101, and the

-7-

Supreme Judicial Court would not have viewed the matter

differently if the word "federal" had appeared in the heading

ofthesection thatsetoutthe irrationalclassificationsargument.

We turn, therefore, to the merits and begin with the

district court's holding that the denial of credit to

Beauchamp impermissibly forecloses or burdens the "right of

access" to the courts. Undoubtedly, Beauchamp has a

constitutional right of access to the courts, e.g., Bounds v.

Smith, 430 U.S. 817, 821 (1977), and if Illinois had barred

Beauchamp from filing a federal habeas action to challenge

his detention, serious constitutional concerns would arise.

We will assume arguendo that the federal right of access

included the state habeas proceeding as well.

No one, however, prevented Beauchamp from filing his

successive habeas actions in Illinois. Rather, the issue is

whether Massachusetts' refusal to credit the time spent in

this litigation is an unconstitutional burden upon

Beauchamp's right of access. Here, the Supreme Court's

decisions provide relatively little direct guidance. Burden

issues, presenting the familiar problem of how much is too

much, peculiarly depend on facts and context, and the Supreme

Court has not had much to say about the relationship between

extradition challenges and the refusal to credit time served

in an out of state jail.

-8-

Where burdens are laid upon the exercise of

constitutional rights by prisoners, the Supreme Court's

current approach is to give very substantial latitude to the

state's judgment. E.g., Turner v. Safley, 482 U.S. 78

(1987); compare Procunier v. Martin, 416 U.S. 396 (1974).

But such cases differ because they involve the actual running

of prisons and the most practical considerations of

discipline, security, administrative feasibility and cost.

While some of these concerns may apply in this case, they are

greatly diluted when the issue is the calculation of a

sentence, a task performed by an administrator with a pencil.

If one looks for analogies to our own case, the closest

ones in the Supreme Court appear to be two decisions, both of

which concern burdens on litigation choices provided to the

defendant. In United States v. Jackson, 390 U.S. 570 (1968),

the Court held it unconstitutional to subject a kidnapper to

a possible death penalty if, but only if, the defendant

elected a jury trial. North Carolina v. Pearce, 395 U.S. 710

(1969), with equal firmness, held that a defendant who

chooses to appeal a conviction may, where successful, be

given a higher sentence in a subsequent retrial. Jackson was

plainly influenced by the enormity of the penalty, so that

Pearce--where seven justices seemed unconcerned about

deterring appeals--may be the more pertinent guidepost.

-9-

Taking together Turner, Jackson and Pearce, the best we

can say is that the burden on the opportunity to litigate

cannot be unreasonable, and reasonableness largely turns upon

the facts. With some emphases peculiar to prison regulation,

Turner itself identifies pertinent criteria: whether the

state's policy serves a valid governmental interest; the

extent to which the prisoner is foreclosed or burdened in

exercising his rights; and the presence or absence of

reasonable alternatives for the government to achieve the

same ends by other means without significant cost or

impairment of the governmental interest at stake. 482 U.S.

at 89-91.1

In this case the governmental interest is patent:

Massachusetts is entitled to shape its own sentences and,

within very broad limits, is entitled to insist that a

sentence of so many years means years served in a

Massachusetts prison. E.g., Boutwell v. Nagle, 861 F.2d 1530

(11th Cir. 1988), cert. denied, 490 U.S. 1099 (1989); Pernell

v. Rose, 486 F.2d 301 (6th Cir. 1973), cert. denied, 415 U.S.

985 (1974). True, serving part of the sentence in Illinois

may not be very different. But this is a practical matter on

which views may vary. Further there is a symbolic importance

1A fourth consideration mentioned in Turner--any ripple

effect of the remedy sought upon the correctional institution
and other inmates--was linked peculiarly to prison operations
and the special need for deference to corrections officials.
Id. at 90.

-10-

to the state's ability, as a separate sovereign in criminal

law enforcement, to shape its own procedures and penalties.

Turning to the impact on escaped prisoners, the denial

of credit clearly does not foreclose access to the courts,

and we think it unlikely that colorable claims against

extradition will be discouraged. The legitimate grounds for

challenging a rendition warrant are narrow and reasonably

clear-cut. See Commonwealth v. Beauchamp, 595 N.E.2d at 309-

10. If an alleged escapee subject to such a warrant has a

substantial defense to extradition and thus a fair to good

prospect of avoiding a return to certain imprisonment, he or

she is not likely to be discouraged by a penalty (denial of

credit) that will never be visited if extradition is blocked.

Finally, there is no "ready alternative" to the denial

of credit. See Turner, 482 U.S. at 90. If Massachusetts

does give credit to Beauchamp, it defeats the very interest

that underlies the no-credit rule: that the Commonwealth

fixes the place of imprisonment, not the prisoner. "To rule

otherwise would allow the defendant to choose the State where

he would serve a significant portion of his sentence."

Beauchamp, 595 N.E. at 310. "[T]he absence of ready

alternatives is evidence of the reasonableness of a

[challenged state policy]." Turner, 482 U.S. at 90.

Accordingly, if the choice is between the burden laid on

legitimate challenges and the state's interest in defining

-11-

its own sentences, we think that the state interest is

legitimate, the burden is very light, and no obvious

alternative is available to achieve the former and avoid the

latter. But two further questions remain: one is whether the

state's decision to deny Beauchamp credit is tainted by a

retaliatory motive, and the other is whether the singling out

of escaped prisoners presents an equal protection problem.

We address these issues in that order.

The district court, in addition to finding an undue

burden upon Beauchamp's right of access to the courts,

declared that the Commonwealth sought to penalize Beauchamp

for resisting extradition:

The Department of Corrections' refusal to credit
[Beauchamp's] sentence with the time he spent in
custody challenging extradition cannot stand. The
record suggests that in refusing Beauchamp's
request for credit, the Commonwealth
unconstitutionally penalized him for exercising his
right to contest rendition to Massachusetts; [the
Commonwealth] has not shown otherwise.

Although this may look like a "finding" of the motive for the

Commonwealth's action, the situation is somewhat more

complicated than that.

First, there is no record evidence concerning the motive

of Department of Corrections' personnel who made the initial

decision. Both the district court decision and Beauchamp's

brief rely upon arguments made in the attorney general's

brief in the state's highest court that "to provide credit

toward [an escapee's] sentence . . . for time spent

-12-

contesting extradition opens the floodgates to a significant

increase in extradition contests by escaped inmates."2 We

are in the same position as the district court to reason from

the attorney general's written argument, so that the clear

error doctrine has no application here.

In the state court proceeding, the Department of

Correction also provided an affidavit from the chief of its

fugitive apprehension unit making similar contentions; but

this, too, was essentially a litigation document and did not

suggest that Washburn had any personal involvement in making

the decision to deny credit to Beauchamp. It is questionable

whether either the arguments made in the state's brief or the

Washburn affidavit amount to anything more than a kind of

"post hoc rationale" that courts do not normally accept as a

basis for appraising administrative action. NLRB v. Yeshiva

Univ., 444 U.S. 672, 675 n.22 (1980). In any event, neither

document suggests any individualized attempt to target

Beauchamp.

Second, we do not think that unconstitutional

retaliation is involved even if we assume arguendo that the

2The district court does say that if Beauchamp had not
contested extradition, he would have received credit for time
spent in Illinois "for those same days of imprisonment." But
those "same days" would never have existed if Beauchamp had
agreed to extradition, and in fact Massachusetts did credit
Beauchamp with the very brief time spent in Illinois after
his extradition contest failed and he was available to
Massachusetts.

-13-

correctional authorities do believe that giving credit would

spur time-wasting challenges to extradition. General rules

often rest upon multiple considerations, and concerns about

abusive litigation underlie a number of federal rules adopted

by the courts themselves. These include restrictions on

habeas corpus itself, e.g., McKleskey v. Zant, 499 U.S. 467,

491 (1991), and sanctions under Fed. R. Civ. P. 11, not to

mention various common law torts such as malicious

prosecution.

The Commonwealth's policy, even if resting in part on

litigation concerns, seems to us a mile away from a warden's

decision to disadvantage a prisoner because that prisoner

filed a law suit against the warden. This is not, or at

least has not been shown to be, a case of individual

retaliation for pursuing constitutional rights. At most, as

one element in a legitimate decision generally to deny credit

to escaped prisoners for time spent outside Massachusetts,

the state has given some weight to the benefits of getting

the escapee back promptly where he or she belongs.

We turn finally to the claim that Massachusetts has

denied equal protection to Beauchamp, a claim not addressed

by the district court but advanced by Beauchamp as an

alternative basis to sustain the judgment. Beauchamp is

entitled to defend the district court's judgment on any

properly preserved ground that would serve to sustain it,

-14-

whether or not adopted by the district court. E.g., Martin

v. Tango's Restaurant, 969 F.2d 1319, 1325 (1st Cir. 1992).

The equal protection claim based on indigency made in state

court has not been renewed before us. Cf. Palmer v. Dugger,

833 F.2d 253 (11th Cir. 1987) We proceed, therefore, to

Beauchamp's claim that Massachusetts applies its no-credit

rule based on irrational classifications.

As the foundation for his argument, Beauchamp asserts

that "Massachusetts awards sentence credit to parole

violators and pre-trial detainees for time served in other

states contesting extradition to Massachusetts." It is true

that by statute, Massachusetts requires that prisoners be

credited with time served during pretrial detention. Mass.

Gen. L. ch. 127, 129B, ch. 279, 33A. Another statute

denies credit to a parole violator for time spent out of

prison during revocation proceedings. Id., ch. 127, 149.

Where no statute applies--as in the case of time spent in

detention out of state while resisting extradition--the

Massachusetts courts apply a test of fairness.3

Other than Beauchamp the only other decision by the

Supreme Judicial Court involving an escaped prisoner is

Chalifoux. In that case, the escapee was sentenced to time

3E.g., Beauchamp, 595 N.E.2d at 926; Chalifoux v.

Commissioner of Correction, 377 N.E.2d 923, 926 (Mass. 1978);

Commonwealth v. Grant, 317 N.E.2d 484, 486-87 (Mass. 1974);

Brown v. Commissioner of Correction, 147 N.E.2d 782, 784

(Mass. 1958).

-15-

by a California court intended to be served concurrently, in

Massachusetts, upon extradition there. Massachusetts refused

to accept immediate rendition because of overcrowding and

then, after the California sentence had been served, refused

to reduce the Massachusetts sentence for the time spent in

California. On fairness grounds, the Supreme Judicial Court

ordered a credit. Taking the two cases together, we think

that the prevailing practice in Massachusetts is apparently

to deny credit to escaped prisoners for time spent litigating

extradition, absent extraordinary circumstances or distinct

equities.4

One must tread cautiously in generalizing about equal

protection, for there are countless Supreme Court precedents

that cannot all be reconciled even in hundreds of pages of

erudite discussion. See, e.g., L. Tribe, Constitutional Law

1436-1672 (2d ed. 1988). The classification here, however,

is between prison escapees and other fugitives and is far

from any previously deemed suspect. Compare, e.g., Palmore

v. Sidoti, 466 U.S. 429 (1984) (racial classification).

Similarly, the classification does not in any sense deprive

or deny to anyone a fundamental right; at most, it may impose

4See also In re Kinney, 363 N.E.2d 1337, 1338 (Mass.

App. Ct. 1977) (stating the general rule that an escape
"suspend[s] the running of the original sentence until such
time as [the defendant] should be returned to" the
institution from which he escaped).

-16-

a conjectural and incidental burden unlikely to discourage

any substantial objections to extradition.

Since there is no suspect classification here involved,

nor any deprivation of fundamental rights, the ordinary equal

protection test is extremely deferential. The standard

formula is that a non-suspect classification is

unconstitutional only if no legitimate basis can be imagined

to support it. E.g., Harrah Independent School District v.

Martin, 440 U.S. 194 (1979). And "support" means only that a

legislature--or, here, a state court acting in its stead--

could provide a rational basis for the choice. E.g., Vance

v. Bradley, 440 U.S. 93, 111 (1979).

Turning to the distinctions assertedly drawn by

Massachusetts, pretrial detainees (whether held in

Massachusetts or held outside the state while contesting

extradition) are a peculiarly sympathetic case for credit;

these are presumptively innocent individuals held primarily

to assure their presence at trial. Credit for such detention

is widely available. There is nothing whatever irrational

about a general rule that pretrial detention time should be

credited as a matter of course, nor does it conflict with a

presumptive rule against credit for time spent out of state

by one who is convicted and later escapes from prison.

A closer case is presented by the fact, if fact it is,

that credit is given to a parolee who violates parole, flees

-17-

the state and then contests extradition back to

Massachusetts.5 But an escape from prison, even by one on a

12-hour pass, can rationally be treated as a more serious

default than a parole violation. By the same token the state

may take a more sympathetic view of time spent in detention

out of state by one who was out on liberty than by one who

was suppose to be residing in a Massachusetts prison. Again,

the distinction is not irrational.

Beauchamp says that these supposed exceptions undercut

any assertion by the Commonwealth that it is interested in

having a Massachusetts sentence served only in Massachusetts

jails. But a legitimate interest does not cease to be so

because rational exceptions are made on account of

countervailing general concerns or individual equities.

Here, some of the exceptions are more compelling than others,

but none involves a suspect classification or is outside the

bounds of minimal rationality so as to violate the equal

protection clause of the 14th Amendment.

Beauchamp's final claim is that the denial of credit

violates the Fifth Amendment's prohibition against double

jeopardy made applicable to the states through the 14th

Amendment's due process clause. The Supreme Court precedent

5The state has submitted a letter agreeing that this is
the policy followed and arguing that it is consistent with
Mass. Gen. L. ch. 127, 149. See also Blake v. Rapons, C.A.

No. 91-0795B (Mass. Super. Ct., April 21, 1991).

-18-

relied upon by Beauchamp is North Carolina v. Pearce, a

different aspect of which was discussed above. In Pearce a

defendant served part of his sentence for an offence before

getting the conviction overturned on appeal. Then on retrial

he was convicted and resentenced. In the new sentence,

Pearce was denied credit for the time he served incident to

the first conviction for the same crime.

In the ruling relied on by Beauchamp, the Supreme Court

held that this denial of credit violates the double jeopardy

clause's prohibition against "multiple punishments for the

same offense," 395 U.S. at 717, observing:

[T]his basic constitutional guarantee is violated
when punishment already exacted for an offense is
not fully "credited" in imposing sentence upon a
new conviction for the same offense.

Id. at 718. We think that the formal holding of Pearce on

this issue has no application to Beauchamp. In our case, the

time spent in Illinois was not formally a "punishment" for

the Massachusetts second-degree murder conviction but a

decision by Illinois to hold Beauchamp--who had already fled

once--pending extradition to complete his Massachusetts

sentence.

Formalities deserve weight in applying a fairly

technical constitutional prohibition such as the double

jeopardy clause. That is the lesson of the Court's further

holding in Pearce that a stiffer sentence on retrial after a

successful appeal does not offend the clause. See 395 U.S.

-19-

at 711. The same formal approach is implicit in the even

more famous holding that separate state and federal

punishments for the same conduct do not violate the double

jeopardy clause. E.g., Heath v. Alabama, 474 U.S. 82, 89

(1985).

The force of Beauchamp's argument does not lie on the

technicalities of double jeopardy. Its essence is a due

process appeal to concepts of fundamental fairness: after

all, but for the Massachusetts detainer, Beauchamp would not

have spent four years in an Illinois jail; and the result of

denying him credit is to hold him in custody, if the Illinois

and Massachusetts terms are combined, for more than the

minimum term otherwise available in Massachusetts. This

argument would have special force if, for example, a state

denied credit to a convicted prisoner for time spent in

pretrial detention.

But this is a one-sided portrayal of the events in this

case. Beauchamp's stay in the Illinois jail is causally

related not only to his Massachusetts sentence but also to

his own action in escaping from Massachusetts prison and then

resisting extradition (mainly on spurious grounds). And, as

we have explained above, Massachusetts has a legitimate, if

partly symbolic, interest in having the full sentence served

in its own prison. To deny Beauchamp credit is simply not a

-20-

case of fundamental unfairness in the constitutional sense.

Compare Rochlin v. California, 342 U.S. 165 (1952).

The Massachusetts rule could strike some observers as a

severe one, but an arguably severe rule is not automatically

unconstitutional. Where as here the underlying issue is one

of minimum fairness and rationality, a federal court polices

the outer perimeter. Where issues are ones on which rational

and civilized men and women can reasonably differ, the

resolution of such choices is not for us.

Reversed.

Dissent follows.

-21-

BOWNES, Senior Circuit Judge, dissenting.

The court has written a very persuasive opinion.

This is due to a combination of two factors: the outstanding

skill and writing style of the author; and its invocation of

the doctrine of "fundamental fairness" to reach a result that

seems at first blush to be fair and just. After all, why

should an escaped felon be rewarded for resisting extradition

to the state from which he fled prison? I dissent, however,

because I think the court's opinion does not meet head-on an

important constitutional issue raised by petitioner. This

issue was, in my judgment, squarely confronted and correctly

decided by the district court.

With respect, I do not think that the basic issue

is "fundamental fairness"; instead, I believe it is whether

petitioner's constitutional right of access to the courts was

violated. For the reasons that follow I think that this

constitutionally guaranteed right was abridged.

An inmate has no independent federal constitutional

right to credit on a sentence lawfully imposed by one state,

for time spent in the custody of another state, absent a

statute in the sentencing state so providing. See Boutwell

v. Eagle, 861 F.2d 1530, 1531 (11th Cir. 1988), cert. denied,

490 U.S. 1099 (1989); Palmer v. Dugger, 833 F.2d 253, 254

(11th Cir. 1987). Petitioner does not have a constitutional

right to credit for the time spent in custody in Illinois

-21-

fighting extradition to Massachusetts. The question is

whether the practice of the Massachusetts Department of

Corrections (DOC), pursuant to which he was denied credit,

amounts to retaliation against escapees who exercise their

right of access to the courts.

It is well settled that prisoners, no less than any

other citizens, have a constitutional right of access to the

courts. See Bounds v. Smith, 430 U.S. 817, 821 (1977); Wolff

v. McDowell, 418 U.S. 396 (1974); Johnson v. Avery, 393 U.S.

483 (1969). "[S]tates have an affirmative obligation to

assure that inmates have meaningful access to courts."

Germany v. Vance, 868 F.2d 9, 14 (1st Cir. 1989) (internal

quotation marks and citation omitted); see also Bounds, 430

U.S. at 832-24.6

The right of access has been developed primarily in

prisoner cases where the inmate seeks to challenge the

conditions of his confinement or his underlying conviction.

See Crowder v. Sinyard, 884 F.2d 804, 811 (5th Cir. 1989),

cert. denied, 496 U.S. 924 (1990). These cases generally

concern the adequacy of prison libraries, access to legal

6. Although the Supreme Court has, at various times, viewed
the right of access as one aspect of the Due Process Clause
of the Fourteenth Amendment, the First Amendment right to
petition government for grievances, and the Privileges and
Immunities clause of Article IV, section 2 of the
Constitution, see generally Germany, 868 F.2d at 17 & n. 9,

we believe that it is most appropriate to view the Due
Process Clause as the source of that right. Id. at 17.

-22-

assistance, or the availability of pens, paper, postage and

other non-legal materials without which court documents

cannot be drafted. See, e.g., Alston v. DeBruyn, 13 F.3d

1036 (7th Cir. 1994) (denial of access to law library and

adequate legal assistance); Petrick v. Maynard, 11 F.3d 991

(10th Cir. 1993) (inadequate law library); Davidson v. Smith,

9 F.3d 4 (2d Cir. 1994) (destruction of inmate's legal

materials); Gluth v. Kansas, 951 F.2d 1504 (9th Cir. 1991)

(high postage, copying and supply costs); Ching v. Lewis, 895

F.2d 608 (9th Cir. 1990) (right of access includes attorney

visitation); see also Bounds, 430 U.S. at 824-25 ("[I]ndigent

inmates must be provided at state expense with paper and pen

to draft legal documents, with notarial services to

authenticate them, and with stamps to mail them."). The

right of access is not, however, limited to such cases. As

the Supreme Court held in the context of a diversity tort

action nearly a century ago:

The right to sue and defend in courts is
the alternative of force. In an
organized society it is the right
conservative of all other rights, and
lies at the foundation of orderly
government. It is one of the highest and
most essential privileges of citizenship
. . . granted and protected by the
federal constitution.

Chambers v. Baltimore & Ohio R.R., 207 U.S. 142, 148 (1907).

And at least, one court of appeals has explicitly rejected

the proposition

-23-

that a prisoner's right of "adequate,
effective, and meaningful" access to the
courts, as recognized by the Supreme
Court in Bounds v. Smith, is limited to

the presentation of constitutional, civil
rights, and habeas corpus claims . . . .
[T]he Bounds opinion was primarily

concerned with constitutional and civil
rights claims and with the minimum legal
resources that prisons must afford to
inmates to ensure effective access to the
courts. Recognition of the
constitutional right of access to the
courts, however, long precedes Bounds,

and has from its inception been applied
to civil as well as constitutional
claims.

Jackson v. Procunier, 789 F.2d 307, 311 (5th Cir. 1986)

(collecting cases); accord Straub v. Monge, 815 F.2d 1467,

1470 (11th Cir.), cert. denied, 484 U.S. 946 (1987). The

constitutional right of access to the courts is broad, and is

not limited to an inmate's right to challenge conditions of

confinement or an underlying conviction. It covers an

inmate's right to bring a divorce action, Corpus v. Estelle,

441 F.2d 68, 70 (5th Cir. 1977), and a common law nuisance

lawsuit, Harrison v. Springdale Water & Sewer Comm'n, 780

F.2d 1422, 1427-28 (8th Cir. 1986). I believe that it also

encompasses the right of an escaped felon to challenge his

extradition.

Under Illinois law petitioner had a statutory right

to challenge his extradition. See Ill. Ann. Stat. ch. 725,

225/10 (Smith-Hurd 1992). Petitioner also had a federal

right to challenge his extradition through a habeas corpus

-24-

proceeding in federal court. Crummley v. Snead, 620 F.2d

481, 483 (5th Cir. 1980) (citing Roberts v. Reilly, 116 U.S.

80 (1885)).

It is now firmly established that an act taken in

retaliation for the exercise of a constitutionally protected

right is forbidden, even if the act, if taken for a different

purpose, would have been proper. McDonald v. Hall, 610 F.2d

16, 18 (1st Cir. 1979); Matzker v. Herr, 748 F.2d 1142, 1150

(7th Cir. 1984). Retaliation by prison officials against an

inmate for pursuing legal action constitutes interference

with that inmate's right of access to the courts. McDonald,

610 F.2d at 18; see also Smith v. Maschner, 899 F.2d 940, 947

(10th Cir. 1990); Valandingham v. Bojorquez, 866 F.2d 1135,

1138 (9th Cir. 1989). Thus, although an inmate may not, for

example, have a constitutional right to remain in a

particular institution or hold a particular job assignment,

prison officials may not transfer him or deny him a job

assignment in retaliation for the exercise of a

constitutionally protected activity. See Williams v. Meese,

926 F.2d 994, 998 (10th Cir. 1990) (inmate transfer cannot be

used as retaliation); Howland v. Kilquist, 833 F.2d 639, 644

(7th Cir. 1987) (same); McDonald, 610 F.2d at 18 (same). The

same rationale applies to the denial of credit against a

prisoner's sentence for time spent in another state's custody

while challenging extradition.

-25-

In addressing petitioner's claim of retaliation,

the district court found:

The circumstances of this case . . .
strongly suggest the presence of a
retaliatory response to a prisoner's
exercising his constitutional right of
access to the courts. The facts indicate
a reasonable likelihood that in denying
Beauchamp's request that it credit his
sentence with the time he spent in
custody in Illinois solely on the basis
of the Massachusetts escape charges, the
Commonwealth's Department of Corrections
impermissibly penalized him for invoking
his statutory right to challenge
rendition. Undisputedly, only because
Petitioner invoked his right to contest
extradition was he deprived of sentencing
credit for 1,574 days he spent in
custody; had he waived extradition and
returned immediately to Massachusetts'
custody, he would have received full
credit for those same days of
imprisonment.

Beauchamp, slip op. at 13. We review the district court's

factual finding of retaliation for clear error, and will

reverse only if we are firmly and unequivocally convinced

that an error has been committed. See Tresca Bros. Sand &

Gravel v. Truck Drivers Union, Local 170, 19 F.3d 63, 65 (1st

Cir. 1994); American Title Ins. Co. v. East West Financial,

16 F.3d 449, 453 (1st Cir. 1994). In other words, if the

district court's factual finding is plausible based on a

whole-record review, we must affirm even if we would have

reached a different result in the first instance. See

Anderson v. Bessemer City, 470 U.S. 564, 573 (1985).

-26-

The district court inferred the existence of

retaliation from the fact that respondent had previously

argued that the denial of credit to petitioner for the time

he served in Illinois challenging extradition was essential

to discourage extradition contests by escapees. Respondent

argues that this is not enough on which to base a finding of

retaliation, and that "[p]ositive evidence of retaliatory

action is necessary." Brief for Respondent at 24. Although

I am not sure what respondent means by "positive," I assume

that it means direct as opposed to circumstantial evidence.

Time and time again courts have stressed that

"[p]recisely because the ultimate fact of retaliation turns

on defendants' state of mind, it is particularly difficult to

establish by direct evidence." Smith, 899 F.2d at 949

(citing McDonald, 610 F.2d at 18). Thus, circumstantial as

opposed to direct evidence may be enough to support a finding

of retaliation. See Mesnick v. General Elec. Co., 950 F.2d

816, 828 (1st Cir. 1991), cert. denied, 112 S. Ct. 2965

(1992). In the present case, however, there was direct

evidence in the record to support petitioner's allegation of

retaliation. In the Superior Court of Massachusetts,

respondent submitted evidence showing how quickly escapees

are generally returned to Massachusetts after being

apprehended. It then argued that petitioner should not be

credited for his Illinois time because doing so would

-27-

improperly provide escapees with an incentive to challenge

extradition. Clearly respondent was advocating that

petitioner's claim for credit should be denied so that other

escapees would be deterred from challenging extradition in

the future, despite their established right to do so. My

review of the record leads me to conclude that there was

sufficient evidence from which a rational factfinder could

find that petitioner was retaliated against for having

challenged his extradition. And this is as far as an

appellate court can go. I believe that the court had no

choice but to uphold the district court's finding that

respondent impermissibly retaliated against petitioner for

exercising through habeas corpus proceedings his right of

access to the courts.

The court neatly avoids the issue of retaliation by

pointing out that petitioner himself was not denied access to

the courts. This ignores the fact that petitioner's claim

for credit was denied by DOC to discourage the bringing of

such claims in the future, regardless of the merits, and in

the face of the recognized right of escaped felons to contest

extradition in the courts.

As part of its "fundamental fairness" rationale the

court, in effect, finds that petitioner's basis for

contesting extradition had no merit. I do not think that the

right of access to the courts hinges on the probability that

-28-

a given claim will succeed. The resolution of the

constitutional question should not turn upon a post hoc

determination that petitioner's extradition challenges were

frivolous.

It is settled that, "when a prison regulation

impinges on inmates' constitutional rights, the regulation is

valid if it is reasonably related to legitimate penological

interests." Turner v. Safley, 482 U.S. 78, 89 (1987).

Although Turner concerned prison rules and regulations, I see

no reason why its rationale should not apply to other prison

actions that threaten an inmate's access to the courts, such

as the denial of credit on a sentence, as in the case at bar.

Cf. Frazier, 922 F.2d at 562 (applying Turner to inmate

transfer).

In conducting a Turner analysis, the district court

found it dispositive that "[r]espondent . . . [had]

proffer[ed] no legitimate penological interests which might

justify the Commonwealth's response to Petitioner's exercise

of his right to challenge rendition." Beauchamp, slip op. at

15. Respondent has repeated its omission by failing to

provide this court with any penological interests that are

advanced by denying sentence credit to petitioner. Those

interests (real or imagined) did not prevent the Commonwealth

from crediting the petitioner with the time he spent in

Illinois after his extradition challenge. See ante at 12

-29-

n.2. This belies the court's characterization of the no-

credit rule as a "decision generally to deny credit to

escaped prisoners for time spent outside Massachusetts," ante

at 14. Application of the rule only to the time associated

with the petitioner's exercise of his constitutional right

bolsters the inference that the denial of credit was

retaliatory. See supra at 8-9. Respondent simply argues

that the Turner analysis is inappropriate in the case at bar.

See Brief for Respondent at 23-24. But respondent does not

explain why this is so, nor does it offer an alternative

test. Respondent does argue that principles of federalism

require this court to defer to state court decisions to

credit or not to credit a prisoner's sentence with time

served in another state. I have been unable to find any

legal basis for respondent's theory.

I recognize that prison administrators must be

given wide latitude in formulating policies and procedures

for running their prison systems, see Procunier v. Martinez,

416 U.S. at 405 ("courts are ill equipped to deal with the

increasingly urgent problems of prison administration and

reform"), particularly where state prisons are involved, see

Turner, 482 U.S. at 85 ("Where a state penal system is

involved, federal courts have . . . additional reason to

accord deference to the appropriate prison authorities.").

States, however, cannot implement, without justification,

-30-

practices or policies that interfere with the exercise of

prisoners' constitutional rights. See id. at 89-90. While

there may exist some legitimate penological interest that

would justify denying petitioner credit for the time he

served in Illinois, I can only speculate as to what it might

be.

Petitioner is not a person who evokes sympathy.

Nor does his plight suggest that a great injustice has been

done him. Nevertheless, he has raised an important

constitutional issue involving the right of access to the

courts. And I do not think that the issue should be avoided

by masking it in the garb of "fundamental fairness." The

court today decides that a Massachusetts escaped felon has no

right to credit against his time spent in custody while

exercising his undoubted right to contest extradition. I

respectfully disagree. For the reasons stated herein I would

affirm the judgment of the district court. I, therefore,

dissent.

-31-