Byron ALSTON, Plaintiff–Appellant,

v.

H. Christian DeBRUYN,* et al.,
Defendants–Appellees.

No. 91–3927.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 14, 1993.

Decided Jan. 5, 1994.

* H. Christian DeBruyn is substituted for his predecessor, James E. Aiken, as Commissioner of the Indiana Department of Correction pursuant to Fed.R.App.P. 43.

Dan Conley (argued), Quarles & Brady, Milwaukee, WI, for plaintiff-appellant.

Wayne E. Uhl, Deputy Atty. Gen. (argued), Office of the Atty. Gen., Federal Litigation, Indianapolis, IN, for defendants-appellees.

Wayne E. Uhl, Deputy Atty. Gen. and Pamela Carter, Asst. Atty. Gen., Office of the Atty. Gen., Federal Litigation, Indianapolis, IN, for amicus curiae.

Before CUMMINGS, BAUER and RIPPLE, Circuit Judges.

CUMMINGS, Circuit Judge.

Byron Alston, an Indiana state inmate, appeals the dismissal of his civil rights complaint as frivolous under 28 U.S.C. § 1915(d). This appeal questions the propriety of that dismissal, which was with prejudice and without leave to amend the complaint. We conclude that the district court abused its discretion in dismissing the complaint because Alston raised colorable claims and should have had the opportunity to cure the complaint's shortcomings by amendment.

## I. FACTS

 Alston, along with twelve other inmates, brought a *pro se* complaint styled as a "class action" under 42 U.S.C. § 1983, alleging that the conditions of confinement on the administrative segregation unit of the Indiana State Reformatory violated the First, Eighth, and Fourteenth Amendments, and seeking declaratory and injunctive relief and damages. Specifically, the complaint alleged (1) the denial of religious programs; (2) the denial of access to the law library and limited consultation with legal assistants; (3) the denial of due process in connection with the inmates' placement on administrative segregation; (4) the denial of educational, vocational, and rehabilitative programs; and (5) the inadequate preparation of food. Named as defendants were the Commissioner of the Indiana Department of Corrections ("In Official Capacity"), the Superintendent of the Indiana State Reformatory, and two Reformatory employees.[1] The district court *sua sponte* dismissed the complaint with prejudice prior to service of process, finding it to be frivolous within the meaning of 28 U.S.C. § 1915(d). The court denied the requests to proceed *in forma pauperis* and for class certification. Only Alston appealed the dismissal of the complaint, raising the first three claims set forth above.

---

1. The Indiana Attorney General suggests that the defendants were sued only in their official capacities because they were listed by name and title and were described by position. While the mere reference to a defendant by his or her official title is not dispositive of the type of suit brought by a *pro se* plaintiff, *Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir.1991), a determination that this was an official capacity suit would not preclude Alston from obtaining relief, for the Eleventh Amendment would shield the defendants from Alston's claim for damages but not from his claim for an injunction. *Knox v. McGinnis*, 998 F.2d 1405, 1412–13 (7th Cir.1993).

## II. DISCUSSION

The *in forma pauperis* statute, 28 U.S.C. § 1915(d), authorizes federal courts to dismiss a claim filed *in forma pauperis* " 'if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.' " *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989) (quoting 28 U.S.C. § 1915(d)). In *Neitzke,* the Supreme Court held that a complaint is frivolous "where it lacks an arguable basis either in law or in fact." *Id.* at 325, 109 S.Ct. at 1831–32. Section 1915(d) "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.* at 327, 109 S.Ct. at 1833. Examples of legally frivolous claims include "claims against which it is clear that the defendants are immune from suit," and "claims of infringement of a legal interest which clearly does not exist"; examples of factually frivolous claims are "claims describing fantastic or delusional scenarios." *Id.* at 327–28, 109 S.Ct. at 1833.

In *Denton v. Hernandez,* —— U.S. ——, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992), the Supreme Court elaborated on the "clearly baseless" guidepost for determining factual frivolity:

> [A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible; whether or not there are judicially noticeable facts available to contradict them. An *in forma pauperis* complaint may not be dismissed, however, simply because the court finds the plaintiff's allegations unlikely. Some improbable allegations may properly be disposed of on summary judgment, but to dismiss them as frivolous without any factual development is to disregard the age-old insight that many allegations might be "strange, but true; for truth is always strange, Stranger than fiction."

*Id.* at —— – ——, 112 S.Ct. at 1733–34 (quoting Lord Byron, "Don Juan," canto 14, stanza 101).

The Supreme Court reaffirmed that a § 1915(d) dismissal is reviewed for an abuse of discretion. *Id.* at ——, 112 S.Ct. at 1734. In determining whether a district court abused its discretion, the court of appeals may consider whether the plaintiff was proceeding *pro se;* whether the court inappropriately resolved genuine issues of disputed fact; whether the court applied erroneous legal conclusions; whether the court provided a statement of reasons explaining the dismissal; and whether the dismissal was with or without prejudice. *Id.* "[I]f it appears that frivolous factual allegations could be remedied through more specific pleading, a court of appeals reviewing a § 1915(d) dismissal should consider whether the District Court abused its discretion by dismissing the complaint with prejudice or without leave to amend." *Id.; see Smith–Bey v. Hospital Adm'r,* 841 F.2d 751, 758 (7th Cir.1988) (§ 1915(d) dismissal with prejudice is inappropriate where absence of sufficient facts in complaint is due to unskilled *pro se* plaintiff and amendment will cure deficiencies of complaint); *Ricketts v. Midwest Nat'l Bank,* 874 F.2d 1177, 1179 n. 1 (7th Cir.1989) (same; quoting *Smith–Bey* ); *see also Graves v. Hampton,* 1 F.3d 315, 319 (5th Cir.1993) (construing *Denton* to suggest that § 1915(d) dismissals generally are to be without prejudice).

### A. The Denial of Access to Religious Programs

Inmates retain the right to exercise their religious beliefs. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987); *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972). A prison regulation that infringes on an inmate's First Amendment rights is valid only "if it is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). A prison "need make only reasonable efforts to afford the inmates an opportunity to practice their faith." *Al–Alamin v. Gramley,* 926 F.2d 680, 687 (7th Cir.1991). "In providing this opportunity, the efforts of prison administrators, when assessed in their totality, must be even-handed." *Id.* at 686. Thus, if segregation

was proper, all the defendants would need to establish is that Alston had "some opportunity" to exercise his protected rights. *Arsberry v. Sielaff*, 586 F.2d 37, 44 (7th Cir.1978).

The complaint in this case alleged that inmates in the administrative segregation unit were denied access to religious programs. The complaint read, "We are giveing no kind of religious program on this unit, They never come on the unit, for those progarms." The district court found this claim to be frivolous. In so finding, the court stated:

> Here, the reasonableness of controlling the movement of prisoners in A/S Unit and of controlling its environment cannot reasonably be doubted. The entire premise of assignment to A/S Unit is a finding by prison authorities that such assignment is necessary to maintain the inmate's safety and security. This identifies the legitimate and compelling penological goal underlying the actions to which the plaintiffs object in this action. Those actions, as alleged by the plaintiffs, are not an exaggerated or unreasonable response to the violence which has been described. Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel. It would be entirely contrary to the principles expressed and repeated by the Supreme Court for a federal court to monitor or second-guess the decisions of prison administrators in determining whether and how long to impose a lockdown following repeated serious instances of inmate violence in a housing unit.

> \* \* \* \* \* \*

> Considering (1) the paucity of factual allegations here, stating that the plaintiffs have been denied the opportunity to attend unspecified group religious services organized by inmates or others from the general population, (2) the circumstances under which that denial has occurred and (3) the deference which must be accorded to the reasonable decisions of administrators such as the defendants here, the complaint fails to state an arguable claim that the plaintiffs' First Amendment right to the reason-

able opportunity to the exercise of religious freedom has been infringed.

*Alston v. Aiken, et al.*, No. IP 91 1269 C, Order at 5–6 (S.D.Ind. Dec. 20, 1991) (footnotes and citations omitted).

■ The district court's finding of frivolity constituted an abuse of discretion. The record is devoid of evidence concerning the Indiana State Reformatory's policy on religious practices and the need for the restrictions imposed on inmates confined in administrative segregation. Absent such evidence, the district court had no basis to conclude that the limitations on Alston's First Amendment rights were reasonable. The court's assumption that the defendants were justified in restricting Alston's religious freedom simply because he was in administrative segregation was improper. *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir.), *cert. denied*, 492 U.S. 909, 109 S.Ct. 3224, 106 L.Ed.2d 573 (1989); *see, e.g., Caldwell v. Miller*, 790 F.2d 589, 599 (7th Cir.1986) (absent evidentiary support, allegation that total ban on group religious activity following lockdown was reasonably related to security concerns was insufficient basis for summary judgment); *Mawhinney v. Henderson*, 542 F.2d 1, 3 (2d Cir.1976) (prisoner's allegation that while in punitive segregation and disciplinary keeplock he was denied participation in chapel services without any showing as to necessity of his exclusion survived § 1915(d) dismissal). Under *Denton*, Alston should have had an opportunity to amend the complaint to explain how he was denied worship services and the circumstances surrounding this denial.

### B. The Denial of Access to Courts

■ It is well-established that inmates have a fundamental constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). This fundamental right is not diminished when inmates are held in segregation. *Peterkin v. Jeffes*, 855 F.2d 1021, 1038 & n. 20 (3d Cir.1988). To prove a violation of the right of access to the courts, an inmate must show (1) the failure of prison officials "to assist in the preparation and filing of meaningful legal papers by providing

prisoners with adequate law libraries or adequate assistance from persons trained in the law," *Bounds,* 430 U.S. at 828, 97 S.Ct. at 1498, and (2) "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of the plaintiff's pending or contemplated litigation." *Shango v. Jurich,* 965 F.2d 289, 291 (7th Cir.1992); *Jenkins v. Lane,* 977 F.2d 266, 268 (7th Cir.1992) (same). The showing of detriment is waived, however, where the inmate alleges "a direct, substantial and continuous, rather than a 'minor and indirect' limit on legal materials." *Jenkins,* 977 F.2d at 268 (quoting *DeMallory v. Cullen,* 855 F.2d 442, 448–49 (7th Cir.1988)).

The complaint alleged that the inmates on administrative segregation were denied both access to the prison law library and adequate legal assistance. The complaint read, "We are not giveing access to the law library on this unit. But three times a week were they get to come over for one (1) hour for 75 inmates." The district court found this claim to be frivolous, stating:

> [T]here are three factors which defeat any claim the plaintiffs have directed toward the interference with their right of access to the courts. First, the plaintiffs complain only of limited time available in the Reformatory law library. Second, none of the plaintiffs identify what violations of fundamental constitutional rights occurred for which they did or would have sought redress in the courts. Third, as a corollary to this second factor, the plaintiffs have not alleged any specific or even general detriment from the actions of the defendants. An allegation of detriment is necessary to support a claim of interference with an inmate's right of access to the courts, and no allegation of detriment is present or even suggested by the complaint here. There has been no cognizable violation of the denial of the plaintiffs' right of access to the courts.

*Alston v. Aiken, et al.,* No. IP 91 1269 C, Order at 7 (citations omitted).

■ The district court's determination of frivolity was an abuse of discretion. The court misconstrued the complaint as alleging only "limited time in the Reformatory law library," and implied that the constitutional requirement is met whenever an inmate is given any time in a law library. Not so. The touchstone is "meaningful" access, not just access. *Bounds,* 430 U.S. at 823, 97 S.Ct. at 1495. Because this obligation falls on the defendants, they "bear the burden of proving the adequacy of the means provided." *Shango,* 965 F.2d at 292 (quoting *DeMallory,* 855 F.2d at 446). While prison security concerns justify restrictions on court access, *id.,* the district court decided that the limitations placed on Alston's access to the courts were reasonable without any factual support, in contravention of *Denton. See Denton,* —— U.S. at ——, 112 S.Ct. at 1734.

■ The district court also erred in concluding that Alston's failure to allege a general or specific detriment warranted the dismissal of his access to the courts claim under § 1915(d). We recently reversed a § 1915(d) dismissal of a *pro se* complaint on this basis. *See Casteel v. Pieschek,* 3 F.3d 1050 (7th Cir.1993). In *Casteel,* one of the plaintiffs, a pretrial detainee at the Clark County, Indiana Jail, brought a complaint alleging that the law library to which he had access was insufficiently stocked, and that the amount of time the inmates had in the law library was inadequate. The district court *sua sponte* dismissed the complaint with prejudice, finding it to be frivolous. We concluded that dismissal was premature, holding that the district court should have allowed the plaintiff to amend his complaint to rectify its shortcomings, and that the defendant should have been required to file an answer. *Id.* at 1056. We stated:

> [Plaintiff] alleges in his complaint that the law library to which he had access for three hours a week did not contain basic reference materials or caselaw reporters or annotated statutes. While we agree with the district court that [plaintiff] failed to identify the claims he sought to bring but could not because of the unconstitutional deprivation of access and that [plaintiff] failed to allege prejudice, we note that he did identify the constitutional right the defendant allegedly violated and the specific facts constituting the deprivation. Importantly, he had no opportunity to amend

his complaint in order to comply with the necessary requirements for stating a claim. As a *pro se* litigant, and particularly in light of his alleged lack of access to adequate legal materials or legal advice, [plaintiff] should have been given a chance to conform his pleadings to the correct legal standard.

*Id.* Like the plaintiff in *Casteel,* Alston should have had an opportunity to particularize his claim of lack of access to the courts to include a showing of injury.

### C. The Denial of Due Process on Administrative Segregation

The district court failed to address the inmates' claim that their confinement on administrative segregation deprived them of due process. The complaint alleged:

4. They are holding plaintiffs on unit without beening giveing the rights to call wintess and are not giving lay-assistance.

5. There is no kind of Procedures mandateing this unit and abused plaintiffs with this and are keeping them on the unit for indefinitely time.

 \* \* \* \* \* \*

7. We are placed on this unit for punishment By Staff members not the Superintendent. The same people that place you here are on the board.

8. There is a board of subordinate prison Employees who place you on the unit AND Keep you on the unit By the board.

■ Prison officials have "broad administrative and discretionary authority" to remove inmates from the general prison population. *Hewitt v. Helms,* 459 U.S. 460, 467–68, 103 S.Ct. 864, 869–70, 74 L.Ed.2d 675 (1983). As a result, the decision by prison officials to place an inmate in nonpunitive administrative segregation does not implicate the Due Process Clause of the Fourteenth Amendment unless state law creates a liberty interest in remaining free from the restraints imposed. *Id.* at 466, 103 S.Ct. at 868. To create a constitutionally protected liberty interest, a state statute or regulation must employ "language of an unmistakably mandatory character, requiring that certain proce-

dures 'shall,' 'will,' or 'must' be employed ... and that administrative segregation will not occur absent specified substantive predicates." *Id.* at 471–72, 103 S.Ct. at 871; *see Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 462–63, 109 S.Ct. 1904, 1909–10, 104 L.Ed.2d 506 (1989). If a liberty interest exists, due process requires only "an informal, nonadversary review of the information supporting [the inmate's] administrative confinement, including whatever statement [the inmate] wishe[s] to submit, within a reasonable time after confining him to administrative segregation." *Hewitt,* 459 U.S. at 472, 103 S.Ct. at 872. An inmate must receive "some notice of the charges against him and an opportunity to present his views" either in writing or in person to prison officials, and a review by the decision maker of the charges and the available evidence. *Id.* at 476, 103 S.Ct. at 873. Administrative segregation, however, may not be used as a "pretext for indefinite confinement of an inmate." *Id.* at 477 n. 9, 103 S.Ct. at 874 n. 9. Therefore, "[p]rison officials must engage in some sort of periodic review of the confinement of such inmates. This review will not necessarily require that prison officials permit the submission of any additional evidence or statements." *Id.*

■ Whether Indiana law grants Alston a protected liberty interest in mingling with the general population is undecided. *See Smith v. Shettle,* 946 F.2d 1250, 1252–54 (7th Cir.1991). Section 11–10–1–7(a) of the Indiana Code permits administrative segregation if the prison "first finds that segregation is necessary for the offender's own physical safety or the physical safety of others." Ind.Code § 11–10–1–7(a) (1991). In *Smith,* this court concluded that if section 11–10–1–7(a) is the only source of authority to segregate inmates, it constrained prison officials' discretion. *Id.* at 1252. Without deciding the question, we went on to hold that the inmates received all the process due them, which included "some ongoing review" of their status. *Id.* at 1254. Given our decision in *Smith,* Alston's due process claim is not frivolous.[2] Further factual development is

---

2. Insofar as Alston claims a constitutional right to call witnesses and to have lay assistance fol-

necessary concerning the sources of authority governing Alston's confinement and the procedures accorded him while so confined.[3]

## III. CONCLUSION

In light of *Denton*, we conclude that the district court abused its discretion in dismissing Alston's complaint with prejudice pursuant to § 1915(d). We accordingly vacate the judgment of the district court and remand this case for further proceedings consistent with this opinion.[4]

lowing his transfer to administrative segregation, *Hewitt* grants him no such rights. *Hewitt*, 459 U.S. at 476, 103 S.Ct. at 873; *see Toussaint v. McCarthy*, 801 F.2d 1080, 1100–01 (9th Cir.1986) ("[T]he due process clause does not require detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation."), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987); *cf. Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (inmates facing loss of good-time credits arising from disciplinary charges for misconduct must be given advance notice of charges, opportunity for evidentiary hearing, decision by impartial tribunal, and written statement of reasons to satisfy due process).

**3.** *See, e.g., Hewitt*, 459 U.S. at 477 & n. 9, 103 S.Ct. at 874 & n. 9 (affirming summary judgment for prison officials; Pennsylvania law conferred liberty interest on inmates in remaining in general population; five-day delay prior to review of inmate's administrative confinement satisfied due process); *Jones v. Coonce*, 7 F.3d 1359 (8th Cir.1993) (reversing in part and affirming in part denial of summary judgment for prison officials on qualified immunity; Missouri law conferred liberty interest on inmates in remaining in general population; thirty-day delay prior to informal nonadversary review was unreasonable, whereas delays of up to fifteen days were reasonable); *Black v. Parke*, 4 F.3d 442 (6th Cir.1993) (affirming denial of summary judgment for prison officials on qualified immunity; Kentucky law conferred liberty interest on inmates in remaining in general population; whether inmate received

due process while under "lock down" was triable issue); *Layton v. Beyer*, 953 F.2d 839 (3d Cir.1992) (vacating entry of judgment for inmate following bench trial; New Jersey law conferred liberty interest on inmates in remaining in general population; remand for finding whether twenty-day delay prior to hearing was reasonable); *Frazier v. DuBois*, 922 F.2d 560 (10th Cir.1990) (reversing § 1915(d) dismissal; inmate's claim that he was placed arbitrarily in administrative segregation without a hearing was before court on incomplete record as to nature of inmate's confinement, prison regulations governing his confinement, procedures accorded to him, and extent to which he exhausted administrative remedies); *Gittens v. LeFevre*, 891 F.2d 38 (2d Cir.1989) (affirming summary judgment for prison officials on qualified immunity; New York law conferred liberty interest on inmates in remaining free from administrative keeplock; seven-day delay in order to allow inmate to make statement prior to disciplinary hearing was unreasonable); *Sheley v. Dugger*, 833 F.2d 1420 (11th Cir.1987) (remanding denial of habeas petition for evidentiary hearing; Florida law conferred liberty interest on inmates to remain in general population; remand to determine whether inmate received due process during twelve-year confinement in administrative segregation).

**4.** The twelve inmates who failed to join Alston's appeal cannot take advantage of the vacatur and are left with the district court's adverse judgment on account of res judicata. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 400–01, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981); *Horwitz v. Alloy-Automotive Co.*, 992 F.2d 100, 104–05 (7th Cir.1993).