87 F.3d 1316
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Leslie J. SCHATZ, Plaintiff-Appellant,
v.
Gary R. McCAUGHTRY, et al., Defendants-Appellees.
 No. 93-3801.
 United States Court of Appeals, Seventh Circuit.
 Submitted May 7, 1996.*
Decided June 11, 1996.
 
 Before FLAUM, EASTERBROOK and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Leslie Schatz, a prisoner at Waupun Correctional Institution in Waupun, Wisconsin, filed suit pursuant to 42 U.S.C. § 1983 against Warden Gary R. McCaughtry, Ana M. Secchi, Associate Warden and Treatment Director, Matthew J. Frank, an Assistant Attorney General for the State of Wisconsin, Louis Tomaselli, a Special Agent for the Division of Criminal Investigation of the Wisconsin Department of Justice, and Nancy O'Connell, the Confidential Secretary to the Postmaster in Madison, Wisconsin. The district court awarded summary judgment in favor of these defendants.[1] Among the numerous errors alleged in his appellate brief, Schatz claims that the district court erred by failing to grant him in forma pauperis status on his entire original complaint, by refusing to give him leave to file his second amended complaint and by granting summary judgment. We affirm.
 
 
 2
 In his original complaint, Schatz alleged that various defendants interfered with his newspapers and legal mail, his visitation rights and his access to the prison library. He also alleged that photocopying cost too much. The district court properly granted leave to proceed in forma pauperis on the entire complaint pursuant to 28 U.S.C. § 1915(a), and then dismissed portions of it as frivolous pursuant to 28 U.S.C. § 1915(d),[2] now recodified as § 1915(e).[3] House v. Belford, 956 F.2d 711, 718-19 (7th Cir.1992). In sum, the remaining claims consisted of a claim against Secchi, Tomaselli, Frank and McCaughtry for interfering with his legal mail in violation of the Sixth Amendment and, with respect to McCaughtry only, both a due process claim based on an alleged deprivation of visitation rights and a First Amendment claim concerning interference with his newspapers. Schatz subsequently filed his first amended complaint, which dropped certain defendants not involved in this appeal and added O'Connell and an unnamed Waupun postal worker for interfering with his legal mail.[4]
 
 
 3
 Schatz later filed a second amended complaint. It added a new plaintiff, Alvin Hegge, a fellow prisoner who had provided him with informal legal advice, over twenty new named defendants (including the governor of Wisconsin and the Waupun National Bank) and numerous unnamed defendants. The defendants allegedly participated in a conspiracy to violate Schatz's constitutional rights at trial and in prison and to retaliate against him in myriad ways. Schatz needed leave to amend because he had already exercised his right to amend once, see Fed.R.Civ.P. 15(a), and he sought to add new parties, LaBatt v. Twomey, 513 F.2d 641, 651 n. 9 (7th Cir.1975). Finding that the complaint far exceeded the scope of the original complaint and that its allegations were too diverse in nature, the court refused to accept it as an amendment to the complaint in this case. Instead, the court treated it as a separate suit and denied leave to proceed in forma pauperis. This court affirmed that dismissal. Schatz v. Thompson, No. 93-1490 (7th Cir. Jan. 6, 1994) (unpublished order). Schatz claims that the district court abused its discretion by refusing to accept the complaint as an amendment. Especially in light of this court's affirmance of the dismissal, the district court's refusal did not constitute an abuse of discretion.
 
 
 4
 Schatz contends that the district court erred by refusing to give him more time to respond to the defendants' motions for summary judgment. Before any motions were filed, the district court had issued a standing order stating that a response must be filed within 20 days after service of the motion for summary judgment, unless the court ordered otherwise. Failure to dispute the moving party's proposed facts would result in their being deemed admitted. On March 17, 1993, O'Connell filed a motion for summary judgment, which included a notice complying with Lewis v. Faulkner, 689 F.2d 100 (7th Cir.1982). McCaughtry, Secchi, Frank and Tomaselli filed their motion for summary judgment the next day. As of June 2, 1993, Schatz had still not responded. In an order entered on that day, the district court noted that Schatz had been acting under the misconception that the court lacked jurisdiction and granted him until June 30, 1993 to respond.[5] It warned him that if he failed to observe the revised schedule, it would decide the defendants' motions on their submissions alone. In a motion dated June 25, 1995, Schatz requested more time. As he argues on appeal, he claimed that the court could not consider summary judgment until it resolved the jurisdictional issue and that he required more time because his informal legal advisor, Hegge, needed to use the library. Hegge had been barred from the prison library from June 20 through July 13, 1993 for alleged misconduct. The court denied the request.
 
 
 5
 The decision of whether to grant additional time is entrusted to the district court's discretion. Spears v. City of Indianapolis, 74 F.3d 153, 157 (7th Cir.1996). We find no abuse of discretion. First, the court did not need to address the jurisdictional issue because it had already informed Schatz that the issue lacked merit when it gave him the first extension. Second, Hegge's alleged difficulties are not dispositive. The court suggested that Schatz sought the extension merely for the sake of delay. We note that overall he had received far more time than the standard amount under the district court's standing orders. Cf. Instituto Nacional de Comercializacion Agricola v. Continental Illinois Nat'l Bank & Trust Co., 858 F.2d 1264, 1271-72 (7th Cir.1988). He did not contend that he himself totally lacked access to the library or that Hegge could not have provided assistance by using the library during the period of over two weeks prior to June 20. The district court also pointed out that Schatz did not need a law library to submit evidence to contradict the defendants' proposed facts. It did not abuse its discretion.
 
 
 6
 Schatz contends that his second amended complaint created genuine issues of material fact. However, he effectively admitted the defendants' proposed findings of fact by failing to file a timely response. Under its standing order, the district court could rely on Schatz to demonstrate a factual dispute. See Doe v. Cunningham, 30 F.3d 879, 885 (7th Cir.1994); see also Waldridge v. American Hoechst Corp., 24 F.3d 918, 923 (7th Cir.1994); Tatalovich v. City of Superior, 904 F.2d 1135, 1139-40 (7th Cir.1990). Thus, even if he could rely on the allegations in his unverified complaint--which he could not--the district court could ignore this document and any other additional materials that he had failed to call to its attention.
 
 
 7
 Because Schatz admitted the defendants' undisputed material facts and failed to direct the court to contrary evidence, the court properly found most of his claims unsubstantiated on the facts before it. McCaughtry did not interfere with his visitation rights. Neither O'Connell, who had no contact with the other defendants, nor Frank and Tomaselli interfered with the sending or receipt of his mail in the first place.
 
 
 8
 The only instances of "interference" with Schatz's mail consisted of Secchi's refusal to mail a package and McCaughtry's excision of an article from a newspaper. On October 5, 1992, Secchi, who relied on a three day old account statement that indicated a negative balance, refused to pay postage for a package addressed to Schatz's brother. She returned the package to Schatz. A statement dated October 5, 1992 indicates that money had been deposited in Schatz's account. However, Secchi stated that the October 2, 1992 statement was the most current statement available to her and that the October 5 statement would have become available to her the next day. These assertions remain uncontradicted. No evidence brought to the district court's attention indicates that this particular package actually contained legal mail or, if it did, that Secchi was aware of it. Nor is there any such evidence suggesting that this particular refusal prejudiced any pending litigation, or that Secchi had generally prevented him corresponding with others. By failing to respond, Schatz admitted that Secchi never concealed, delayed, censored or interfered with his legal mail at any time apart from this one refusal to pay Schatz's postage for apparently private mail. "[A]lthough prisoners have a right of access to the courts, they do not have a right to unlimited free postage." Gaines v. Lane, 790 F.2d 1299, 1308 (7th Cir.1986). Summary judgment was appropriate.
 
 
 9
 According to the defendants' submissions to the district court, McCaughtry interfered with Schatz's mail only once, and it did not involve his access to the courts. At the request of Dick Verhagen, the Deputy Administrator of Adult Institutions, McCaughtry ordered his employees to cut an article entitled "Chronicle of Death Foretold," from the November 18, 1992 issue of The Madison Edge. Verhagen had informed the Warden that, in McCaughtry's words, it contained statements that "could place in serious jeopardy the welfare and safety of staff as well as the security of my institution...." In his affidavit, McCaughtry said that he believed that "to a reasonable degree of probability" that the article contained such statements.
 
 
 10
 McCaughtry asserts that he has qualified immunity because he was following Verhagen's orders.[6] In the qualified immunity context, "[a]n official's actions are not immunized because they were taken according to orders or regulations if the defendant still knew or should have known that he was violating plaintiff's constitutional rights." J.H.H. v. O'Hara, 878 F.2d 240, 244 n. 4 (8th Cir.1989), cert. denied, 493 U.S. 1072 (1990); see Woods v. City of Michigan City, 940 F.2d 275, 280-81 (7th Cir.1991) (holding that officers who reasonably acted pursuant to judicially promulgated bond schedule and who could not have known that it violated plaintiff's constitutional rights were immune). Although Warden McCaughtry may have such expertise in prison affairs that he could reasonably be expected to know that censoring a prisoner's newspaper without a neutral legitimate penological justification would violate the prisoner's First Amendment rights, see Thornburgh v. Abbott, 490 U.S. 401, 414 (1989), there is evidence (albeit hearsay to which Schatz has made no objection in the district court or on appeal) that the newspaper article constituted a threat to prison security and the safety of prison staff. See Lac du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc., 991 F.2d 1249, 1259 (7th Cir.1993) (objections to hearsay statements in supporting affidavits not raised below may be waived). Schatz provided no evidence showing that these penological interests were not present, that some other more suspect reason motivated the censorship, or that McCaughtry had an obvious, easy alternative to excising the article. See Thornburgh, 490 U.S. at 417-18. McCaughtry did not otherwise interfere with the prisoner's mail. In sum, construing the evidence in Schatz's favor, McCaughtry did not violate his First Amendment rights. Because the merits are clear, we need not address the issue of qualified immunity further. Griffin v. City of Milwaukee, 74 F.3d 824, 827 (7th Cir.1996).
 
 
 11
 Schatz makes numerous other assertions that either are insufficiently raised as arguments on appeal, see Fed.R.App.P. 28(a)(6), or lack merit. We will not address them in detail.
 
 
 12
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f) (1995). No such statement having been filed, the appeal is submitted on the briefs and record
 
 
 [1]
 When granting summary judgment, the district court properly dismissed another defendant, an unnamed Waupun postal worker, because there was no indication that Schatz had either identified or served the postal worker
 
 
 [2]
 Schatz asserts that the court should not have denied leave to proceed in forma pauperis on his claim that he had inadequate access to the law library and legal supplies because he failed to allege a quantum of detriment. This decision would be an abuse of discretion if the court had dismissed the claim with prejudice without providing an opportunity to amend. Alston v. DeBruyn, 13 F.3d 1036, 1041-42 (7th Cir.1994). However, the district court did not initially specify that this claim was dismissed with prejudice, and ordinarily "a 1915(d) dismissal is not a dismissal on the merits." Denton v. Hernandez, 504 U.S. 25, 34 (1992). Therefore, it is similar to a dismissal for lack of jurisdiction, which is not subject to the ordinary presumption of prejudice created by Federal Rule of Civil Procedure 41(b). Graves v. Hampton, 1 F.3d 315, 318-19 (5th Cir.1993); see Costello v. United States, 365 U.S. 265, 285 (1961) (holding that exception to Rule 41(b) encompasses category of dismissals for "failure to comply with a precondition requisite to the Court's going forward to determine the merits...."). Schatz had two chances to fix the error by submitting a proper amended complaint and failed to do so for various reasons. The court did not abuse its discretion in denying leave to proceed on this claim
 
 
 [3]
 On April 26, 1996, during the pendency of this appeal, President Clinton signed into law the Prison Litigation Reform Act, Pub.L. 104-134, 110 Stat. 1321. The Act, which recodifies § 1915(d) as § 1915(e), significantly amends the right to bring civil actions in forma pauperis. We need not decide whether it applies in this case. The defendants have not asked us to do so, and even under the prior, more expansive version of § 1915, Schatz is not entitled to relief
 
 
 [4]
 The court denied leave to proceed in forma pauperis on most of the amended complaint for a flaw applicable to its entirety, the absence of a prayer for relief. However, it granted leave to proceed against O'Connell and the postal worker. We construe the court's order as an incorporation of portions of the first amended complaint into the text of the original complaint, with a dismissal of the remainder. Since Schatz has not contested on appeal the propriety of allowing him to amend only in part, we need not consider it further
 
 
 [5]
 Schatz had filed a notice of appeal from the denial of one of his motions to reconsider. He still contends that it divested the district court of jurisdiction. Although filing a notice of appeal usually "divests the district court of its control over those aspects of the case involved in the appeal," Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) (per curiam), "[t]he rule does not operate ... where there is a purported appeal from a non-appealable order," United States v. Bastanipour, 697 F.2d 170, 173 (1982), cert. denied, 460 U.S. 1091 (1983). The district court's order was not appealable under Federal Rule of Civil Procedure 54 or 28 U.S.C. § 1292(b). The collateral order doctrine did not apply. The district court also properly denied in forma pauperis status for that appeal for this reason. Fed.R.App.P. 24(b)
 
 
 [6]
 Similarly, the district court granted summary judgment because McCaughtry could not be held responsible for following his superior's orders. Personal responsibility for a constitutional deprivation is a prerequisite for § 1983 liability. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir.1995). Although an exception may be made in instances in which the defendant was forced by law to comply with an order despite his protests, we have previously rejected the court's theory "to the extent it may imply that an individual is relieved of personal responsibility for perpetrating unlawful acts against another simply because he is acting as an agent or subject to a superior's orders." Busche v. Burkee, 649 F.2d 509, 517 (7th Cir.), cert. denied, 454 U.S. 897 (1981)