**Aaron Antione WILLIAMS, Petitioner,**

**v.**

**Marie WADE and Tonja Hesselberg, Respondents.**

**No. 04–C–905–C.**

United States District Court, W.D. Wisconsin.

Jan. 31, 2005.

Aaron Antione Williams, pro se.

## ORDER

CRABB, District Judge.

This is a proposed civil action for monetary relief, brought under 42 U.S.C. § 1983. Petitioner, who is presently confined at the Prairie Du Chien Correctional Institution in Prairie Du Chien, Wisconsin,

asks for leave to proceed under the *in forma pauperis* statute, 28 U.S.C. § 1915. From the financial affidavit petitioner has given the court, I conclude that petitioner is unable to prepay the full fees and costs of starting this lawsuit. Petitioner has paid the initial partial payment required under § 1915(b)(1).

■ In addressing any pro se litigant's complaint, the court must read the allegations of the complaint generously. *See Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, if the litigant is a prisoner, the 1996 Prison Litigation Reform Act requires the court to deny leave to proceed if the prisoner has had three or more lawsuits or appeals dismissed for lack of legal merit (except under specific circumstances that do not exist here), or if the prisoner's complaint is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law cannot be sued for money damages. This court will not dismiss petitioner's case on its own motion for lack of administrative exhaustion, but if respondents believe that petitioner has not exhausted the remedies available to him as required by § 1997e(a), they may allege his lack of exhaustion as an affirmative defense and argue it on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). *Massey v. Helman,* 196 F.3d 727 (7th Cir.1999); *Perez v. Wisconsin Dept. of Corrections,* 182 F.3d 532 (7th Cir.1999).

In his complaint, petitioner alleges the following facts.

## ALLEGATIONS OF FACT

Petitioner Aaron Antione Williams is an inmate presently confined at the Prairie Du Chien Correctional Institution in Prairie Du Chien, Wisconsin. Respondent Marie Wade is a captain at the facility and respondent Tonja Hesselberg is a lieuten-

ant. On September 3, 2004, around noon, respondent Wade told petitioner that he would have to undo his dreadlocks. When he asked her why, she responded that dreadlocks were no longer allowed in the institution. She explained that dreadlocks are subject to the same regulations as braids and braids must be taken out upon transfers in and out of the facility. When petitioner questioned the reasoning for this policy, respondent Wade told plaintiff that if he took the dreadlocks out, he could probably keep his hair long. In addition, she stated that she did not want petitioner to lose any hair length, but if he refused to take out the dreadlocks, the prison barber would take a razor to his hair.

Petitioner told respondent Wade that wearing dreadlocks was part of his religion and culture. In response, respondent Wade said that she had spoken to the facility's chaplain, who had said that dreadlocks were not a part of any religious belief system. Petitioner asked respondent Wade whether he could go to the prison library to find cases on this matter before he was made to cut his hair. Respondent Wade indicated that petitioner could use the law library and asked him to report to her any information he found as soon as possible. Because it was a Friday, the law library was closed. Petitioner did not have an opportunity to go to the law library until the following Tuesday.

About ten minutes after speaking with respondent Wade, petitioner returned to his housing unit where the unit sergeant informed petitioner that respondent Wade had ordered petitioner to take out his dreadlocks by 2:00 p.m. that afternoon or his hair would be cut off. Petitioner told the sergeant that dreadlocks cannot be taken out and that he would resist having his hair cut.

The following morning around 11:30 a.m., respondent Hesselberg told petitioner that his hair would have to come down that day. When petitioner refused, respondent Hesselberg ordered petitioner to place his hands behind his back. She handcuffed him and led him to the segregation unit. Upon arriving, respondent Hesselberg told petitioner that he could either cut his hair himself or it would be cut for him. When petitioner began to cry, respondent Hesselberg told him to calm down. He asked her how long he would be held in segregation and she said that he would not be released for at least three days because the security director would not be in until Tuesday.

Petitioner was placed in handcuffs and a waist restraint and then led to another room where respondent Hesselberg said that if he were to agree to have his hair cut, he would not be given a conduct report. Petitioner asked her if there were any way he could keep his hair and she responded that dreadlocks were no longer permitted in the facility. Petitioner told respondent Hesselberg that he had already been at the Prairie Du Chien facility for two months and had been informed that he could keep his hair in dreadlocks so long as he followed the rules applicable to braids. Another prison officer, Sergeant Kazda asked respondent Hesselberg why she was requiring petitioner to remove his dreadlocks if he had already been at the facility for two months. At that point, respondent Hesselberg phoned respondent Wade and after discussing the matter with her, said that the removal of dreadlocks was required pursuant to facility policy.

Petitioner told respondent Hesselberg that if there was no way for him to keep his hair, he would allow her to cut it. He said that he did not want to be locked up in segregated confinement if his hair would be cut eventually anyway. Hesselberg called the institution barber, who came and cut petitioner's hair while he remained in

the hand and waist restraints. After his hair was cut, petitioner was released from the restraints and returned to his regular housing unit.

When petitioner returned to his cell, he used a wet towel to tangle his remaining hair in dreadlocks and filed an inmate complaint. Within a few days, petitioner submitted a request to see a psychologist but was sent to see his social worker instead. During their meeting, petitioner had an emotional breakdown. Later, petitioner received a response to the grievance he had filed indicating that he should not have been ordered to remove his dreadlocks. However, petitioner was not afforded any type of relief because the complaint examiners who reviewed his grievance concluded that he had voluntarily agreed to have his hair cut.

## DISCUSSION

### A. *First Amendment*

■■ The First Amendment prohibits prison regulations that burden an inmate's right to freely exercise the religion of his choosing unless the regulation is reasonably related to the prison's legitimate penological interests. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citing *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)). Although petitioner has not identified his religion by name, I will assume that he is a Rastafarian. Rastafarianism is a religious sect that originated among black people of Jamaica but has many African American adherents in the United States. *Reed v. Faulkner*, 842 F.2d 960, 962 (7th Cir.1988). One of the tenets of this faith is that men should not shave, cut or comb their hair, a practice that results in the formation of dreadlocks. *Id.; see also Wyatt v. Terhune*, 315 F.3d 1108, 1112 (9th Cir.2003) (Rastifarian inmate stated free exercise claim in challenging prison grooming standards requir-

ing him to cut his hair). In addition, I understand that petitioner is alleging that respondents violated his First Amendment right to free expression by prohibiting him from keeping his hair in a particular style.

■ The Court of Appeals for the Seventh Circuit has held that regulations on hair length are "plausibly supported considerations of safety and security" because "requiring prisoners to wear their hair short makes it harder for them to change their appearance, should they escape, by cutting their hair short." *Reed*, 842 F.2d at 963; *see also Hill v. Blackwell*, 774 F.2d 338, 343–44 (8th Cir.1985) (prohibition on inmate facial hair reasonably related to legitimate penological interest in identifying inmates quickly). However, this penological interest is not applicable in this case; inmates are not prohibited from wearing braids or dreadlocks or from keeping their hair long but are only barred from keeping their hair bound up when they are transferred between facilities. The most likely reason for the rule is to prevent inmates from transporting small items of contraband in their bound up hair. *See Wilson v. Schillinger*, 761 F.2d 921, 926 (3d Cir.1985) (contraband can be hidden in long hair). Preventing contraband from entering a prison is a legitimate penological interest that justifies some intrusions on an inmate's First Amendment rights. *E.g., Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir.1986) (inspection of incoming mail for contraband). The fact that the prison policy calls for dreadlocks to be undone at the time of transfer and plaintiff was not made to do so until two months later does not mean that there has been a constitutional violation; "not every violation of state law or state-mandated procedure is a violation of the Constitution." *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir.2001).

Given the government's likely interest and the deference accorded to prison officials, *Pell v. Procunier,* 417 U.S. 817, 827, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), petitioner's claim has little chance of success. Nonetheless, the court of appeals has warned that it is improper to dismiss a claim in the absence of evidence of the purpose for the regulation. *Alston v. De-Bruyn,* 13 F.3d 1036, 1039–40 (7th Cir. 1994) (concluding that district court abused its discretion by dismissing petitioner's free-exercise complaint as frivolous where record did not contain evidence of prison's need for restriction). Accordingly, I will grant petitioner leave to proceed on his claim that respondents Wade and Hesselberg violated his First Amendment free exercise and free expression rights.

## B. *Due Process*

■■ I understand petitioner to allege that he has a substantive due process interest in selecting the hair style of his choosing. Because it is difficult to place responsible limits on the concept of substantive due process, the Supreme Court has directed the lower courts to analyze claims under more specifically applicable constitutional provisions before moving on to a substantive due process inquiry. *Albright v. Oliver,* 510 U.S. 266, 274, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). "Where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Id.* (citing *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Because I have already concluded that petitioner has stated a First Amendment claim of free expression in selecting his own hairstyle, I will deny him leave to proceed on his substantive due process claim.

## C. *Equal Protection*

■ The equal protection clause of the Fourteenth Amendment guarantees that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Petitioner asserts that respondents have violated the equal protection clause by treating him differently from inmates wearing braids. However, the facts petitioner alleged do not bear this out. He alleged that respondents told him initially that he was subject to the same rules as inmates wearing braids and for that reason, would have to undo the dreadlocks. It was only after petitioner said that the dreadlocks could not be undone that respondents insisted that his hair be cut. Nothing in his complaint suggests that respondents would not have required an inmate wearing braids to have them cut off if he refused to undo the braids or was unable to do so. Accordingly, petitioner will be denied leave to proceed on his claim that respondents violated his right to equal protection under the law.

## ORDER

IT IS ORDERED that

1. Petitioner Aaron Antione Williams is GRANTED leave to proceed on his claim that respondents Marie Wade and Tonja Hesselberg violated his First Amendment rights to freedom of religion and free exercise by requiring him to cut off his dreadlocks and DENIED leave to proceed on his claims that respondents violated his constitutional right to due process or equal protection.

2. For the remainder of this lawsuit, petitioner must send respondents a copy of every paper or document that he files with the court. Once petitioner has learned what lawyer will be representing respondents, he should serve the lawyer directly

rather than respondents. The court will disregard any documents submitted by petitioner unless petitioner shows on the court's copy that he has sent a copy to respondent or to respondent's attorney.

3. Petitioner should keep a copy of all documents for his own files. If petitioner does not have access to a photocopy machine, he may send out identical handwritten or typed copies of his documents.

4. The unpaid balance of petitioner's filing fee is $121.42; petitioner is obligated to pay this amount in monthly payments as described in 28 U.S.C. § 1915(b)(2).

5. Pursuant to an informal service agreement between the Attorney General and this court, copies of plaintiff's complaint and this order are being sent today to the Attorney General for service on the state defendants.

6. Petitioner submitted documentation of exhaustion of administrative remedies with his complaint. Those papers are not considered to be a part of petitioner's complaint. However, they are being held in the file of this case in the event respondents wish to examine them.