3 F.3d 1050
 27 Fed.R.Serv.3d 344
 John CASTEEL, Mark S. Hinton, and Timothy A. Nesja,
Plaintiffs-Appellants,
v.
Leon R. PIESCHEK, Sheriff of the Brown County Jail, et al.,
Defendants-Appellees.
Charles D. INGRAM, Sr., Plaintiff-Appellant,
v.
Michael L. BECHER, Sheriff of Clark County, Indiana,
Defendant-Appellee.
 Nos. 91-1227, 92-1378.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 13, 1993.
Decided Aug. 23, 1993.
 
 Katherine W. Delahunt, Jones, Day, Reavis & Pogue, Chicago, IL (argued), for plaintiffs-appellants.
 Daniel E. Moore, Jeffersonville, IN, Raymond J. Pollen, Mark A. McClendon (argued), Riordan, Crivello, Carlson, Mentkowski & Steeves, Milwaukee, WI, for defendants-appellee.
 Before POSNER and FLAUM, Circuit Judges, and RONEY, Senior Circuit Judge.*
 FLAUM, Circuit Judge.
 
 
 1
 The Casteel and Ingram appeals were consolidated to consider two questions regarding county jail inmates' constitutional right of access to courts: the extent to which the requirements set out in Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) for prison authorities must also be met by county jail officials, and the applicability of the prejudice requirement under DeMallory v. Cullen, 855 F.2d 442 (7th Cir.1988). Both cases involve individual capacity claims against public officials,[1] however, and therefore we must first resolve the qualified immunity question of whether Bounds' applicability to county jails was clearly established at the time of the alleged violations, and whether reasonable officials could believe the defendants' actions complied with the access-to-courts requirements. Because the record is insufficiently developed to decide this preliminary issue, we reverse and remand both cases.
 
 I.
 
 2
 All four of the plaintiffs were held in county jails pending the outcome of various criminal proceedings against them. They allege that, while they were detained in the two county jails, the defendants deprived them of their constitutional right of access to courts.[2]
 
 A. The Casteel Record
 
 3
 The Casteel plaintiffs are convicted felons serving time in a Wisconsin state prison. Between 1985 and 1987, John Casteel (who sometimes refers to himself by the Muslim name "Tayr Kilaab al Ghashiyah (Khan)" but we will use his original and shorter name for ease of identification), Mark Hinton, and Timothy Nesja were held at the Brown County Jail in Green Bay, Wisconsin, for periods of up to seven months. On November 16, 1987, the Casteel plaintiffs filed their pro se complaint against several Brown County Jail officials. They alleged that the Brown County Jail had no law library, that they were denied materials such as pens and carbon paper with which to prepare legal documents, and that they had no access to anyone trained in the law. The legal claims they expressed an interest in pursuing while detained at the Brown County Jail include conditions of confinement claims, divorce and child custody proceedings, and claims regarding the denial of freedom to practice their religion, denial of due process in disciplinary proceedings, and undue restrictions on their visitation rights. After reviewing their complaint and organizing their claims into five categories, the district court granted their motion for appointment of counsel, Casteel R. 28, but there is no evidence that any appointment was ever made.
 
 
 4
 The Brown County Jail serves as a holding facility for the Brown County Circuit Court, housing prisoners who must appear in the circuit court for proceedings. The plaintiffs lived in the jail as pre-trial detainees, and at least Casteel and Nesja returned for additional proceedings after their convictions. During the pendency of the criminal proceedings against them, the three plaintiffs apparently had access to criminal counsel. Defendant Lauran O'Connor, the current commander of the Brown County Jail, asserted that the jail inmates have weekly access to the law library within the Brown County Circuit Court complex. He also maintained that the prisoners are given a set of jail rules that includes a statement about requesting library materials. The plaintiffs, on the other hand, maintain that the defendants did not inform them of any procedure to gain access to legal materials, and that their attempts to obtain legal materials or assistance were thwarted.
 
 
 5
 On September 11, 1989, after noting that Casteel could not serve as counsel for the other two petitioners because he is not a lawyer, the court required Hinton and Nesja to proceed pro se by signing all documents or to provide the court with the name of the attorney representing them. Casteel R. 42. Hinton signed his name to papers filed with the court from that point, but Nesja did not respond. On January 4, 1990, the Magistrate recommended dismissing Nesja for failure to prosecute. Twelve days later, Nesja filed an objection, claiming that he had not responded to the court's order because he had not received it. He began signing substantive pleadings filed after January. The district court, in its opinion of January 8, 1991, dismissed Nesja for failure to prosecute. The court emphasized Nesja's failure to provide the court with a change of address notice, despite having notified another court handling an unrelated matter.
 
 
 6
 Also on January 8, 1991, the district court granted the defendants' motion for summary judgment on all claims. Rejecting the access-to-courts claim, the district court accepted the defendants' assertion that the inmates knew the procedures to access legal materials and did not consider whether a weekly request system was adequate to afford meaningful access to courts. In addition, the court did not compare the degree of access required from prison officials to that owed by county jail officials, and did not address the circumstances under which a showing of prejudice is required. In a footnote, the court ruled in the alternative that qualified immunity barred the plaintiffs' claims against the defendants.
 
 B. The Ingram Record
 
 7
 Charles Ingram, a Kentucky state prisoner, was detained at the Clark County Jail in Jeffersonville, Indiana from September through November of 1991, while awaiting disposition of additional criminal charges against him. The record does not reveal whether he was represented by criminal defense counsel during his stay at the county jail. Ingram filed a complaint against the Clark County sheriff on December 2, 1991, alleging that he was denied meaningful access to courts while he was held in Clark County. Specifically, Ingram complained that the law library was inadequately stocked with legal materials and that the amount of time inmates were allowed in the law library was insufficient. On January 28, 1992, the district court sua sponte dismissed the complaint with prejudice, finding that the claim was frivolous.
 
 II.
 
 8
 We review a district court's decision to grant summary judgment de novo,Doe v. Allied-Signal, Inc., 925 F.2d 1007, 1008 (7th Cir.1991), and we will affirm the district court's ruling on any basis supported by the record. Delloma v. Consolidation Coal Company, 996 F.2d 168 (7th Cir.1993). At this stage, we draw all reasonable inferences in the light most favorable to the non-moving party. "The non-moving party must identify specific facts to establish that there is a genuine triable issue." Maxwell v. City of Indianapolis, 998 F.2d 431, 433 (7th Cir.1993).
 
 
 9
 The Casteel defendants asserted the affirmative defense of qualified immunity in their answer.[3] As the Supreme Court has made clear, qualified immunity is an immunity from suit, not just from liability for damages. Mitchell v. Forsyth, 472 U.S. 511, 529, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). "[T]herefore, the availability of immunity in a given case should be decided as early as possible in litigation." Maxwell at 467 (citing Hunter v. Bryant, --- U.S. ----, ----, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991)). See alsoHarlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (qualified immunity is a "threshold" question).
 
 
 10
 Under the doctrine of qualified immunity, "public officials performing discretionary functions are protected against suits from damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." Doe v. Bobbitt, 881 F.2d 510, 511 (7th Cir.1989) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). "In determining whether the right alleged to have been violated was 'clearly established,' the constitutional right must be identified in a particularized sense with respect to the circumstances of the alleged violation." Warlick v. Cross, 969 F.2d 303, 309 (7th Cir.1992) (citation omitted). In other words, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The plaintiff bears the burden of showing that the constitutional right allegedly violated was clearly established "before the defendant acted or failed to act." Rice v. Burks, 999 F.2d 1172, 1174 (7th Cir.1993) (citing Rakovich v. Wade, 850 F.2d 1180 (7th Cir.), cert. denied, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988)). This requires the plaintiff to offer either a closely analogous case or evidence that the defendants' conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts. SeeRice, at 1173-74; McDonald v. Haskins, 966 F.2d 292 (7th Cir.1992) (holding a gun to the head of a child and threatening to pull the trigger is plainly excessive force, so closely analogous case is not needed to put police officer on notice). To determine the applicability of qualified immunity, the defendants' actions must be compared to what a reasonable official would believe was required in light of the clearly established legal rules regarding county jail inmates' constitutional right of access to courts.
 
 
 11
 We must decide whether the legal rules requiring county jail officials to provide inmates with meaningful access to courts were clearly established during the relevant period, from 1985 through 1987. In 1977, the Supreme Court held that prison authorities were required "to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). We have held that those prison officials also "bear the burden of proving the adequacy of the means they provide." DeMallory v. Cullen, 855 F.2d 442 (7th Cir.1988) (citing Campbell v. Miller, 787 F.2d 217 (7th Cir.), cert. denied, 479 U.S. 1019, 107 S.Ct. 673, 93 L.Ed.2d 724 (1986)). We decided as early as 1981 that the right of access to courts extended to pre-trial detainees as well as convicted prisoners. Lock v. Jenkins, 641 F.2d 488 (7th Cir.1981) (pre-trial detainees housed in state prison were not denied access to courts when they had access to counsel and materials from prison "writ room"); see alsoKunzelman v. Thompson, 799 F.2d 1172, 1178 (7th Cir.1986); Johnson by Johnson v. Brelje, 701 F.2d 1201, 1207 (7th Cir.1983). "[E]qual protection dictates ... that pre-trial detainees may not be treated less favorably than convicted persons, unless the difference in treatment is justified by a legitimate government interest." Lock, 641 F.2d at 497.
 
 
 12
 We have not specifically decided how closely county jail officials must match prison officials in the provision of legal assistance to inmates. But seeMartin v. Davies, 917 F.2d 336 (7th Cir.1990) (applying Bounds and DeMallory, without discussion of any difference between prison and jail officials, to case involving Cook County (Illinois) Jail inmate); Martin v. Tyson, 845 F.2d 1451 (7th Cir.1988) (applying Bounds, without discussion, to Marshall County (Indiana) Jail inmate). We have, however, recognized that adequate access to counsel may satisfy the authorities' duty to provide meaningful access to courts under Bounds, despite the complete lack of access to a law library. Johnson, 701 F.2d at 1208 (mental health facility). SeeKunzelman, 799 F.2d at 1179 (if county jail inmates enjoyed regular access to public defender, burden shifts to inmate to show that such access was inadequate). Therefore, we find that, although the obligation of county jail officials to provide inmates in their custody some level of meaningful access to courts had been established during the relevant period, the need to provide more than regular access to the public defender's office had not been clearly established.[4]
 
 
 13
 The next step in our analysis of qualified immunity is whether a reasonable county jail official could believe that the access provided by the defendants complied with the constitutional requirements. Plaintiffs must show that a reasonable county jail official would have known in 1985 through 1987 that the defendants' conduct violated the inmates' clearly established right of access to courts. SeeJohnson, 701 F.2d at 1207 (although the right of meaningful access to the courts was clearly established, no prior case affected a mental health facility regulation, so a reasonable person would not have known that the defendant's policy violated the plaintiffs' constitutional rights.). The current commander of the Brown County Jail claims to provide weekly access to the law library located within the Brown County Circuit Court facility, which apparently holds a generous store of legal treatises, statutes, and case reporters. In his affidavit, Casteel describes contact with his criminal defense lawyer from the Public Defender's Office, an organization called Legal Assistance to Incarcerated Persons, and the American Civil Liberties Union. Casteel R. 44, pp 12-16. If the plaintiffs had regular access to criminal counsel, weekly request access to a fully-stocked law library, and letter access to legal assistance organizations which handled meritorious civil claims, the plaintiffs will be hard pressed to show that a reasonable county jail official could not believe that the defendants had provided meaningful access to courts under the established law of the relevant period.[5] Without that showing, the defendants are entitled to qualified immunity.
 
 
 14
 The state of the Casteel record makes our analysis of the defendants' actions under the clearly established laws difficult, if not impossible. For example, key record documents cited by the defendants to show that inmates are informed of the procedures to request materials from the law library (Casteel R. 45) and that plaintiffs have admitted their knowledge of the "existence and utilization of the law library" (Casteel R. 43) are missing from the record. Other important questions such as the actual ability to use the law library by inmates through the request system or the provision of legally trained personnel to assist inmates in filing constitutional claims remain unanswered or buried within the sometimes inscrutable record.
 
 
 15
 Moreover, the record is inconsistent with the briefs on appeal in some respects. For instance, the defendants stated in their briefs and at argument that the plaintiffs failed to allege personal participation by the defendants in the deprivation of their constitutional rights. As the defendants argue, such a failure would be fatal to the success of the plaintiffs' suit, because the defendants have been sued in their individual capacities only. "[P]ersonal capacity suits seek to impose personal liability on a government official for actions he or she takes under under color of state law." Wilson v. Civil Town of Clayton, 839 F.2d 375, 382 (7th Cir.1988) (citing Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985)). "An official who is sued in his or her personal capacity can only be held liable for his or her individual wrongdoing." Id.; see alsoDuckworth v. Franzen, 780 F.2d 645, 650 (7th Cir.1985), cert. denied, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). The record, however, does contain allegations of personal participation against at least some of the defendants. For example, Casteel, Hinton and Nesja specifically name defendants Lantagne, Keith, Revling, Cassada, and Ellis in their allegations that those defendants denied their requests for legal materials. Casteel R. 1, pp 20-24, 92-93, 114. Only those defendants against whom specific allegations have been made should remain as defendants in this action.
 
 
 16
 The district court must resolve the qualified immunity question. Its brief treatment of the issue as an alternative ruling in a footnote did not reflect the application of the relevant standard to the facts of the case. We reverse the decision and remand the case for consideration of that threshold issue. As a preliminary matter, the district court must determine which, if any, defendants should be dismissed because the plaintiffs have not made specific allegations of their personal participation in the claimed violations. Then the court must consider the qualified immunity defense,[6] deciding whether a reasonable county jail official could believe that the defendants' actions did not violate the appellants' right of access to courts, according to the established law at the time of the alleged violations.
 
 III.
 
 17
 The Casteel district court dismissed Timothy Nesja from the case for failure to prosecute. We review this decision for an abuse of discretion, examining "the procedural history of the case and the situation at the time of dismissal." 3 Penny Theater Corp. v. Plitt Theatres, Inc., 812 F.2d 337, 339 (7th Cir.1987). For our most recent discussion of the criteria for appropriate dismissal for want of prosecution, seeBall v. City of Chicago, 2 F.3d 752 (7th Cir.1993). Under Federal Rule of Civil Procedure 41(b), "dismissal is appropriate when there is 'a clear record of delay or contumacious behavior,' or when other sanctions have proved unavailing." 3 Penny Theater, 812 F.2d at 339.
 
 
 18
 The Casteel plaintiffs litigated their claims pro se while they were serving sentences at a Wisconsin prison. It is unclear, particularly in light of their alleged inadequate access to legal materials or legal assistance, whether Hinton and Nesja knew that Casteel could not represent them in this case or that their own signatures were required in order for them to proceed pro se, before the magistrate explained the rules in its September 11 order. Nesja responded a few days after the magistrate's January 1990 recommendation, claiming that he had never received the September order because he had been relocated to Waupun Correctional Institute. After his response in January of 1990, he duly complied with the court's order, signing the pleadings filed on his behalf. A year later, the district court dismissed him for failing to prosecute, focusing on his failure to notify the court of his change of address and pointing out that he had notified another court handling an unrelated suit.
 
 
 19
 We find that the district court abused its discretion in dismissing Nesja. The procedural history of the case reveals only a single instance of noncompliance with a court order. SeeLowe v. City of East Chicago, 897 F.2d 272, 274 (7th Cir.1990) (reversing dismissal when only one instance of noncompliance, which was corrected quickly and did not delay the case, occurred). At the time of the district court's dismissal, the claims had been prosecuted without interruption by the other two plaintiffs. Cf.Carey v. King, 856 F.2d 1439 (9th Cir.1988) (per curiam) (when sole plaintiff fails to notify court of address change, no abuse of discretion in district court's dismissal of case without prejudice). Nesja had been signing his pleadings for a year after the magistrate's recommendation to dismiss him from the case. In addition, we note the lack of prejudice to the defendants, the lack of a delay in the proceedings, and the litigant's status as a state prisoner acting pro se. Under the circumstances, it was an abuse of discretion to dismiss Nesja, and we reverse the decision. The district court, however, may revisit the issue if Nesja, now fully apprised of the extent to which he must participate in the suit in order to prosecute his claims, fails to respond to court orders or exhibits a lack of interest in pursuing the action.
 
 IV.
 
 20
 We review a district court's decision to dismiss a complaint as frivolous de novo, accepting the allegations as true and making all reasonable inferences for the plaintiff. A complaint is frivolous if "it lacks an arguable basis either in law or in fact." Castillo v. Cook County Mail Room Dep't, 990 F.2d 304, 306 (7th Cir.1993) (citation omitted). Ordinarily, a court should permit a litigant, especially a pro se litigant, an opportunity to amend his complaint before dismissing it for failure to state a claim. See generallyVanskike v. Peters, 974 F.2d 806, 807 (7th Cir.1992) (a pro se complaint must be liberally construed). Only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" will we affirm the dismissal. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957).
 
 
 21
 Charles Ingram alleges in his complaint that the law library to which he had access for three hours a week did not contain basic reference materials or caselaw reporters or annotated statutes. While we agree with the district court that Ingram failed to identify the claims he sought to bring but could not because of the unconstitutional deprivation of access and that Ingram failed to allege prejudice, we note that he did identify the constitutional right the defendant allegedly violated and the specific facts constituting the deprivation. Importantly, he had no opportunity to amend his complaint in order to comply with the necessary requirements for stating a claim. As a pro se litigant, and particularly in light of his alleged lack of access to adequate legal materials or legal advice, Ingram should have been given a chance to conform his pleadings to the correct legal standard. The dismissal of his complaint is reversed.
 
 
 22
 Ingram has claimed that the sheriff violated his right of meaningful access to courts by failing to provide an adequate law library or sufficient library access. Accepting the allegations as true and making reasonable inferences for the plaintiff, we cannot say that under no set of facts could Ingram prove his claim. He should have been allowed to amend his complaint to rectify whatever shortcomings the district court found, and the defendant should have been required to file an answer. Assuming that Becher asserts a qualified immunity defense, the district court will have to examine the same factors described for the Casteel case, keeping in mind that the clearly established law in this circuit regarding adequate access to courts for inmates has evolved since 1987, the last relevant time for the Casteel plaintiffs. See, e.g.,Martin v. Davies, 917 F.2d 336 (7th Cir.1990); Martin v. Tyson, 845 F.2d 1451 (7th Cir.1988); DeMallory v. Cullen, 855 F.2d 442 (7th Cir.1988) (no showing of prejudice required if denial of access is substantial and continuous).
 
 
 23
 The judgments are REVERSED and the cases REMANDED to the district courts for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Paul H. Roney, Senior Circuit Judge for the Eleventh Circuit, sitting by designation
 
 
 [1]
 The Casteel plaintiffs amended their complaint to limit the suit to individual capacity claims against the defendant county officials. Casteel R. 61. The Ingram suit has always been limited to an individual capacity claim against the Clark County sheriff. Ingram R. 3
 
 
 [2]
 While the Casteel plaintiffs originally asserted several other claims besides the access-to-courts violation, they waived those issues on appeal by failing to present them. The cursory footnote in the appellants' brief is insufficient to preserve those claims
 
 
 [3]
 Becher, the defendant in the Ingram case, did not file an answer before the district court dismissed the complaint. However, the complaint was brought against Becher in his individual capacity, entitling him to assert a qualified immunity defense. Because on remand Becher is likely to raise the immunity defense, our discussion of the Casteel case will be relevant to the proper disposition of the Ingram case, although we note that the Ingram record promises to be more useful than the Casteel record judging from the relatively clear and succinct pleadings thus far
 
 
 [4]
 The provision of criminal defense counsel, unable or unwilling to assist inmates with a habeas corpus petition or a civil rights complaint, is inadequate under Bounds, 430 U.S. at 822-29, 97 S.Ct. at 1495-98, and we believe that a reasonable jail official would know that providing legal assistance limited to criminal defense was inadequate to protect an inmate's right of meaningful access to courts
 
 
 [5]
 In DeMallory, the state prisoner claimed that none of the legal assistance foundations nor the public defender's office would handle the particular civil matters he wished to pursue. We found that a genuine dispute existed regarding the prison inmate's access to legal assistance, and held that the district court must hold an evidentiary hearing to resolve the issues of adequate access to legal assistance and the security problems in providing access in prison. 855 F.2d at 448. The Casteel record similarly shows some contact with outside agencies, but none agreed to assist the plaintiffs with their claims. DeMallory, however, was decided after the relevant period and concerned the responsibility of prison officials. County jail officials may not have had to show actual assistance from, as opposed to unsuccessful contact with, outside legal personnel in addition to criminal defense counsel, particularly before DeMallory was issued
 
 
 [6]
 We recommend that the district court follow up its decision to appoint counsel for the plaintiffs with an actual appointment, to ensure intelligible briefing on the subject and a discernible statement of facts