**THE CONTINENTAL INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**CHASE MANHATTAN MORTGAGE CORPORATION, as successor to Chemical Bank, and Auto One Acceptance Corporation, Defendants–Appellees.**

No. 01–3817.

United States Court of Appeals, Seventh Circuit.

Argued April 17, 2002.

Decided Feb. 21, 2003.

Before EASTERBROOK, MANION, and KANNE, Circuit Judges.

### ORDER

Continental Insurance Company issued an indemnity insurance policy to Auto One Acceptance Corporation underwriting loans Auto One made in the sub-prime (high-risk) market. Auto One assigned a portion of its auto loan portfolio, including its rights and obligations under the Policy, to Chemical Bank, which subsequently merged with Chase Manhattan Corporation. After paying out nearly ten million dollars in claims, Continental sued Chase and Auto One, alleging that the defendants breached their contractual duties in connection with the default of approximately 550 of 5,000 loans, totaling more than $2.3 million. Several disputes arose during discovery, and after granting the defendants' motions to compel discovery, the district court later barred Continental's expert witness from testifying, and eventually dismissed Continental's lawsuit as a discovery sanction and for failure to prosecute.

Continental appeals, arguing that the district court erred in granting defendants' motions to compel, in barring its expert witness, and in dismissing its lawsuit. We agree and therefore REVERSE and REMAND.

## I.

In May 1990, the Continental Insurance Company ("Continental") issued an indemnification policy ("Policy") to Auto One Acceptance Corporation ("Auto One") for certain losses it might suffer in underwriting automobile loans in the "sub-prime" lending market–i.e., loans to individuals with a poor credit history. In exchange for obtaining Continental's obligation to indemnify under the Policy, Auto One was required, in addition to paying Continental the necessary premiums, to adopt and employ appropriate underwriting standards to minimize the risk of default on these loans–i.e., evaluate the loan applicant's credit history. If a loan went into default, the Policy required Auto One to notify Continental of the default and, according to Continental's interpretation of the Policy, Auto One was also required to vigilantly pursue payment from the borrower and seek recovery of the vehicle serving as collateral for the loan. The Policy also required Continental, upon being notified of a default (i.e., an account delinquent by three or more payments), to pay Auto One the full amount claimed within five days. Finally, the Policy required Auto One to continue providing Continental with all relevant information and documentation in order to facilitate Continental's recovery via its subrogation rights. Auto One assigned a portion of its rights and obligations under the Policy to Chemical Bank, which, by merger, is now Chase Manhattan Mortgage Corporation ("Chase"). During the time the Policy was in effect, the defendants made claims on about 5,000 retail installment sales contracts.

Believing the defendants violated their obligations under the Policy and that this caused it to suffer losses on the defaulting loans, Continental filed a diversity action against Auto One and Chase (collectively "defendants") on approximately 550 of the 5,000 defaulting loans, seeking $2,318,000 in damages: $1,467,000 from Chase and $851,000 from Auto One. Specifically, Continental averred that the defendants breached the Policy by failing to: (1) adopt and employ appropriate underwriting standards to minimize the risk of default on the loans; (2) take steps to recover the collateral (i.e., the vehicles); (3) provide it with timely information concerning the defaulted loans and the status of the vehicles; (4) obtain and remit adequate monies when the vehicles were repossessed; and (5) provide it with adequate and timely documentation of bankruptcy proceedings initiated by or against the debtors. Chase answered Continental's complaint on January 23, 2001, denying liability.

On February 13, 2001, Chase filed a motion to amend its answer to clarify the location of its principal place of business and to attach copies of certain exhibits. On February 20, 2001, the district court held a hearing on Chase's motion to amend its answer.[1] That same day, the district court issued an order granting Chase's motion to amend its answer. The court's order also set a "[d]iscovery cut-off date of 6/10/01 which includes experts, if any," and advised that the "[f]inal pretrial order is to be submitted in open court on 7/19/01 at 9:30 a.m." On February 23, 2001, Auto One filed a motion to dismiss or in the alterna-

---

1. Counsel for Continental did not attend the hearing because it had no objection to the motion. Auto One did not receive notice of the motion or hearing because it had yet to make an appearance in the case.

tive to transfer the action to the United States District Court for the Northern District of Texas. On March 20, 2001, Auto One filed a motion to withdraw this motion, which the district court granted two days later. In its March 22, 2001 order, the district court gave Auto One until "4/5/01 to answer or otherwise plead to the complaint." On March 27, 2001, Auto One filed its answer to Continental's complaint, denying liability.

On May 31, 2001, Continental filed a motion for an extension of time to complete discovery. In support of its motion, Continental noted: (1) the complaint involved claims on 550 different loans issued over a six-year period; (2) each party had a separate file for each of the 550 loans; (3) each party's documents were located at off-site facilities;[2] (4) Chase's interest in having access to all 5,000 of its claims files related to the Policy (which took up more than 200 linear feet of storage space); (5) the defendants' assertion that they would need 90 days to produce their documents and otherwise complete written discovery; (6) the parties would need to conduct over 15 depositions from witnesses in Illinois, Ohio, New York, Texas, California, and likely a number of other states; and (7) both parties planned on using expert testimony at trial. Continental's motion for extension of time to complete discovery emphasized the parties' agreement that "it will be impossible to complete discovery in this extremely document intensive case within the time provide by the Court," and included a proposed discovery plan agreed to by each party's counsel. The parties' proposed discovery plan provided that: (1) written discovery and document productions would be completed by August 20, 2001; (2) depositions of party witnesses and non-party witnesses would commence no earlier than August 25, 2001, and end no later than November 21, 2001; (3) Continental would disclose its expert witnesses, if any, on or before December 7, 2001, and produce any expert reports on or before December 21, 2001; (4) defendants would disclose their expert witnesses, if any, on or before January 7, 2001, and produce any expert reports on or before January 21, 2001; and (5) depositions of expert witnesses would be completed on or before February 28, 2002.

On June 5, 2001, the district court held a hearing on Continental's motion to extend the time to complete discovery. The district court informed the parties that their proposed discovery schedule was unacceptable because it amounted to an "extension until next February [2002]," and noted that "under the Civil Justice Reform Act we have to move these cases along rather quickly." Continental's counsel advised the court that the parties "have all been working with each other quite well to try to figure out how to manage what is a very heavy document intensive case," and that while Continental's suit was based on only 550 loans "the defendants, as I understand their position, want to look not only at those but ... an additional 4500 [loan files]...." The district court once again expressed its belief that the parties' proposed discovery schedule was "just not realistic," and advised them the case would have to proceed at a more rapid pace. After a short break in the proceedings, the parties' attorneys proposed to "complete the fact witness depositions on November 21 [2001] ... but substantially shorten the dates thereafter so that [on] November 28th ... the plaintiff produces its expert report, December 7th the defendants produce their expert's report, and we com-

---

2. Continental's documents were located in Illinois, Chase's documents in Ohio, and Auto One's in Texas.

plete expert discovery [on] December 31st," shortening their prior discovery schedule by two months. The district court rejected this proposal as well, noting:

Well, that's not short enough as far as I am concerned, so I'll set the discovery cutoff date. Let's make it October 31st, and that's going to include expert witnesses. And the date for filing the pretrial order will be in open court on November 27th. These are final dates. They're not going to be extended ... Now, with regard to–I assume as professionals you can work that out. The plaintiff submits the expert's–the plaintiff's expert report, and then the defendant submits the defendants', and you can get it all done before October 31st. So I suggest you start talking experts, if you haven't already. And the rest of that I assume you can work that out. If you can't come back. But as I say, as professionals, you ought to be able to work those things out.

The corresponding minute order, issued that same day, provided "[p]laintiff's motion for extension of time to complete discovery is granted in part and denied in part. Discovery cut-off date is extended to 10/31/01 which includes experts. Date for submission of the final pretrial order in open court is reset to 11/27/01 at 9:30 a.m. These dates are final."

The parties thereafter propounded interrogatories and requests for the production of documents on one another. Initially, the working relationship between the two sides was cordial; Continental granted the defendants extensions to answer discovery requests and vice versa. This relationship began to deteriorate, however, after Continental informed the defendants on June 26, 2001, that some of their interrogatory answers were either "incomplete and/or unresponsive." The defendants provided supplemental answers to the interrogatories identified by Continental, and there is

nothing in the record to indicate that these responses were considered insufficient by Continental. The parties also sparred over Continental's requests for production of documents after the defendants failed to produce the requested documents by the required due date. Specifically, the parties had disputes over the dates and location of production, copying of documents, and the cost of retrieving electronically stored documents. Continental even threatened to file a motion to compel against Chase for failing to produce certain documents in a timely fashion.

The defendants found Continental's responses to their discovery wanting as well, and, in correspondence dated August 24, 2001, advised the plaintiff that they would file a motion to compel unless it provided supplemental responses to certain interrogatories and document requests. The defendants also informed Continental, in that same correspondence, that "we would like to commence our review of [the requested] documents beginning on September 4, 2001." On September 4, 2001, Continental provided supplemental responses to interrogatories and document requests identified by the defendants in their August 24, 2001 correspondence. Still not satisfied with Continental's answers, the defendants filed motions to compel with the district court on September 14, 2001.

In its motion to compel, Auto One requested additional information on thirteen different interrogatories and two document requests, arguing that Continental had failed "to produce information and documents necessary to apprise [it] of the factual basis for Continental's claims in this case." Specifically, Auto One asserted that Continental had: (1) only produced files regarding the 550 accounts being sued upon and "a few boxes of jumbled paper;" (2) failed to Bates-stamp the 30 boxes of documents made available; (3) failed to

provide a comprehensive index of the documents; (4) provided a database, containing thousands of pages of numerical spreadsheets divided into 42 tables, that did not include a comprehensive index and included only claims made by Auto One after 1997; and (5) "refused to answer virtually all of Auto One's interrogatories relating to the factual basis for its lawsuit, on the grounds that the requested facts might be found somewhere in the thirty boxes of documents, or in the huge undecipherable database created by Continental." Based on the foregoing allegations, Auto One contended that "to date, Continental has refused to answer even the most basic discovery relating to the facts supporting its claims, including but not limited to the identity of the agreement allegedly at issue, the identity of any provision of the agreement that Auto One allegedly breached or the basis for Continental's inclusion of certain contracts in its lawsuit but not others...." Finally, Auto One noted that because it "could not glean the basis for Continental's claims without full and complete responses to its discovery," the district court should grant its motion to compel.[3] Chase joined in Auto One's motion to compel, alleging similar discovery deficiencies, and seeking additional responses to five interrogatories and three document requests.

On September 18, 2001, the district court denied Continental's request for three days to respond in writing to the defendants' motions, and instead heard oral argument on the defendants' motions to compel. Continental explained that it had supplemented its responses to address some deficiencies, but that other discovery requests required comparison of information contained in its files with that contained in the defendants' files, and that it was still awaiting discovery from the defendants. Unpersuaded by Continental's response, the district court granted the defendants' motions to compel in its entirety, and in doing so declined to consider any of Continental's objections to the discovery requests, including Continental's objection to producing information relating to approximately 4,500 loan contracts which were not part of the pending litigation. Instead, the district court stated, "[a]ny objections are waived. I don't want to see any objections. Do it right the first time or they are waived, as far as I am concerned."

Over the next week or so, Continental focused on complying with the district court's order, including the defendants' request for information concerning the approximately 4,500 loans that were not part of the lawsuit. Compliance was complicated, however, by the fact that the defendants possessed all of Continental's original documents.

While Continental was proceeding on that front, on September 27, the defendants filed another motion with the district court seeking to bar Continental's expert witness, Robert Lazenby, from testifying on Continental's behalf because Continental had not yet produced Lazenby's expert report. The defendants claimed that under Federal Rule of Civil Procedure 26(a)(2)(c), all expert disclosures must be made at least 90 days prior to the date the case is to be ready for trial, and that Continental failed to comply with this requirement because the district court had ordered the proposed final pretrial order to be filed on November 27, and therefore the 90-day rule mandated disclosure of Lazenby's report by August 27. Because Continental had not yet provided the report, the defendants claimed that Continental should be barred from presenting

---

**3.** Auto One also suggested that Continental had filed its complaint in violation of Fed. R.Civ.P. 11, noting "Continental must have had a factual basis for its claims."

any expert testimony. Continental responded by citing to the district court's discovery schedule which provided that all discovery including experts was to be completed by October 31. The district court, however, ruled that his prior order did not override Rule 26(a)(2)(c)'s 90–day cut-off for expert discovery, and accordingly granted the defendants' motions to bar Continental's expert. Continental filed a motion for reconsideration, but the district court denied that motion as well.

On October 9, 2001, the defendants filed motions to dismiss Continental's complaint as a discovery sanction under Rule 37(b)(2)(C), and for failure to prosecute under Rule 41(b). In support of its motion, Auto One claimed that Continental had failed to provide information as to the theory of breach for "approximately half of the Account Contracts." Auto One also asserted that Continental failed to provide the dates the breaches occurred, failed to specify underwriting criteria, and failed to describe its collection procedures. Additionally, Auto One claimed that Continental had failed to produce the additional 4,500 loan contracts. Finally, Auto One objected to Continental's failure to respond to Interrogatory 11 which sought information concerning the additional 4,500 loans. Chase's motion for dismissal likewise argued that Continental had failed to provide "sufficient factual information" to support Continental's claim as to about 29% of the contracts.

The district court held a hearing on the defendants' motions to dismiss Continental's suit on October 11, 2001. During this hearing, Continental asserted that it had responded to the discovery requests to the extent possible given that it was still awaiting discovery from the defendants. Continental also presented the district court with a response to the motions to dismiss, which it explained negated many of the defendants' allegations of discovery violations. The district court rejected Continental's argument and instead dismissed its claims under Rules 37(b)(2)(C) and 41(b) because Continental "consistently violated court orders." Continental appeals.

## II.

On appeal, Continental argues that the district court erred in granting the defendants' September 14, 2001 motions to compel and specifically in requiring disclosure of evidence concerning the additional 4,500 loan contracts which did not form the basis of its lawsuit. Continental next claims that the district court erred in barring its expert witness. Finally, Continental argues that the district court erred in dismissing its suit as a discovery sanction because it did not violate any of the district court's discovery orders, or alternatively because such a sanction was excessive.

### A. Motions to Compel

Continental first argues that the district court erred in granting the defendants' September 14, 2001 motions to compel in their entirety. We review a district court's discovery ruling for an abuse of discretion. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646 (7th Cir.2001).

In this case, as noted above, Auto One requested additional information on thirteen different interrogatories and two document requests, and Chase requested additional responses to five interrogatories and three document requests. In support of their motions to compel, the defendants presented various alleged discovery violations. However, during the district court's hearing on the motions to compel, the district court only focused on two main issues.

First, the district court focused on Continental's responses to the defendants' interrogatories, wherein Continental directed the defendants to other documents that

purportedly provided the requested information. Federal Rule of Civil Procedure 33(d) provides that in responding to interrogatories, a party may refer to records, as opposed to providing a narrative, if those records are clearly identified.[4] The defendants, however, argued that Continental's response to the interrogatories was deficient under Rule 33(d) because Continental had not clearly identified the records, but instead had merely stated that the answer to the interrogatories "may be found in the claims files and/or in the database." Continental explained to the district court that the loan files were produced by account number and that it had also produced a database which included 42 tables which "summarized every single one of the claims files, which is over 4500 claims files." Continental's attorney further explained that the tables "summarized the amount of money that was lost on every single one of those [claims] [and that it] indicated to [the defendants] in a letter ... which of the 42 [tables] had the most pertinent information."

The district court apparently concluded that Continental's efforts were insufficient and that Continental was instead required to Bates-stamp the documents and respond to the interrogatories with reference to the Bates-stamp number. We say "apparently," because in ruling on the defendants' motions to compel responses to their interrogatories, the district court merely stated in response to Continental's explanation, "[t]hat's not good enough."

The district court also asked Continental's attorneys "how are they supposed to keep track of [the thirty boxes of documents] without being Bates-stamped?" In fact, the district court made continued reference to Continental's alleged refusal to Bates-stamp the documents during the later-held hearings on the defendants' motions to bar Continental's expert and to dismiss its complaint as a discovery sanction and for failure to prosecute. Thus, it appears that the district court believed that Continental was required to Bates-stamp the documents in order to comply with Rule 33(d).

There are several problems with this ruling. First, the district court's ruling on the motions to compel discovery and its subsequent rulings assumed that Continental had refused to Bates-stamp the produced documents. The record, however, is far from clear as to what exactly happened in regard to the Bates-stamping. The defendants contend that Continental refused to Bates-stamp the documents, pointing to a letter from Continental stating that because of the volume of documents involved "the Continental documents would not be Bates stamped...." Conversely, Continental explains that the parties had a practice by which the original documents were not Bates-stamped, but that after the parties had reviewed the documents and decided which were to be copied, they would be sent out for copying and Bates-stamping. Continental further states that the documents were Bates-stamped prior to

4. Rule 33(d) provides:

Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract or summary thereof, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries. A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.

the hearing on the defendants' motions to compel. The defendants rejoin that the documents were only Bates-stamped because they (and not Continental) arranged for the copying and Bates-stamping, since Continental had earlier refused to stamp the documents. Continental then returns volley with an invoice listing its attorney's name, firm and telephone number, and showing that Continental was billed for the Bates-stamping.

The Bates-stamp conflict was a call for the district court in the first instance, to the extent the issue was relevant. Yet the transcript from the hearing on the motions to compel fails to demonstrate that the issue was resolved. Rather, at the hearing on the defendants' motions to compel, the district court began by stating "And you refused to Bates-stamp the documents. Is that right?" Continental's attorney stated "No, that's not." Continental's attorney then further explained that her firm had never been requested to Bates-stamp the documents, and that in any event Bates-stamping was not necessary because the documents were organized by loan number and Continental had produced a detailed spreadsheet which contained the requested information by loan number. The hearing then proceeded down this path, and no further discussion was had as to whether or not Continental had refused to Bates-stamp the documents. Additionally, it appears that whether or not Continental had at one time refused to Bates-stamp the documents, at the time of the hearing, they had been Bates-stamped.[5] Yet, while the district court did not make any factual findings as to the Bates-stamping issue at the hearing on the motions to compel, during the subsequent hearings on the defendants' motions to bar Continental's expert and their motions to dismiss, the district court assumed that Continental had in fact refused to Bates-stamp the documents, noting "[l]ast time you were in here you refused to Bates-stamp and refused to give–don't shake your head because that's what you told me and that's what counsel told me." But the transcript from the hearing on the motions to compel does not support the district court's recollection on that matter, as Continental's attorney's attempted to point out by her "shaking of her head," followed by her response "Your Honor, I .... " to which the district court responded "[t]he motion is granted."

■ At this point, we seem to be examining trivia–Bates–stamping of discovery documents. One would hope attorneys could resolve such disputes without involving federal courts, much less three appellate judges. Yet on appeal the dispute continues, and we are no closer to an answer as to what really occurred. However, Bates-stamping is not the issue–the issue (as even the defendants acknowledge on appeal, see Appellees' Brief at 46), is whether the documents were sufficiently identified for purposes of Rule 33(d). The district court believed they were not because the responses did not include the Bates-stamp numbers. However, Rule 33(d) does not require documents to be identified by Bates-stamp, only that the documents be clearly identified. See Rule 33(d) ("A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained."). Of course, parties may take advantage of Rule 33(d) by referring to the Bates-stamp in interrogatory responses. However, that does not mean that Bates-

---

**5.** The invoice for the Bates-stamping was dated September 14, 2001, and the hearing was not held until September 18, 2001. While the defendants claim that they thought they were going to pay for the Bates-stamping, the invoice was directed to Continental's attorney and the defendants admit that Continental paid for the services.

stamping is the only method by which a party may clearly identify documents responsive to interrogatories. In a case like this involving hundreds of loan files, providing the loan account number (where the documents are organized by account number) and the requested information in a spreadsheet format more than adequately describes the relevant documents for purposes of Rule 33(d). To the extent the district court concluded a method other than Bates-stamping was inadequate, that determination was an abuse of discretion.

That is not to say that the spreadsheet sufficiently responded to the interrogatories. That is another matter, but one that the district court did not seem to reach because in granting the defendants' motions to compel discovery, the district court focused not on the responses provided, but on Continental's failure to identify by Bates-stamp the requisite documents. That is where the abuse of discretion lies.

As noted above, during the hearing on the motions to compel, the district court focused on two main issues. In addition to the issue of compliance with Rule 33(d), the district court also considered the defendants' contention that Continental failed to adequately identify its theory of liability by explaining how it believed the defendants had breached the Policy's requirements. Continental explained that it had informed the defendants that its theories of liability were that the defendants did not use appropriate underwriting standards and had failed to provide it with documentation necessary for it to properly subrogate its losses. However, in order to be more specific it needed to compare the information contained in the defendants' loan files with the information in its own files to determine what information the defendants had failed to provide. Continental's attorney then stated "I have told them that once we have all of their documents, which I have been requesting, we are going to supplement–" at which point the district court broke in, stating:

> That is not before me now. What's before me now is the sufficiency of your responses to discovery, which are insufficient as far as I am concerned. I am going to grant both motions to compel in their entirety. Any objections are waived. I don't want to see any objections. Do it right the first time or they are waived, as far as I am concerned.

■ This ruling constituted an abuse of discretion for two main reasons. First, the district court abused its discretion by compelling Continental to respond to a discovery request without considering Continental's ability to do so. While it is true that Continental had not filed a motion to compel on its own behalf, the district court should have considered the fact that Continental needed access to documents within the defendants' possession in order to fully respond to the defendants' discovery requests. In this case, Continental's theory, in part, was that the defendants had not provided it with notice of default, or relevant documentation. Thus, Continental could only provide complete responses after it had the opportunity to review the defendants' files to determine what documentation the defendants had, but had not forwarded to Continental.

■ Additionally, the district court abused its discretion in granting the defendants' motions in their *entirety* because in doing so, the district court did not consider Continental's objection to the discovery requests, instead holding that Continental waived any objections to the discovery. A district court must consider relevant objections. In this case, the district court's refusal to consider Continental's challenges to the discovery requests unduly burdened Continental by requiring it to respond to extensive discovery requests involving irrelevant evidence. Specifically, the district court abused its discretion in

ordering Continental to respond to discovery requests concerning the additional 4,500 loans Continental had insured and paid upon. None of those files was the subject of the lawsuit.

We asked the defendants during oral argument to explain how those loans were relevant, or likely to lead to relevant evidence. The best the defendants could come up with, however, was that it would show how the 4,500 accounts not sued upon were handled, as compared to the 550 accounts which formed the basis of the lawsuit. Obviously Continental is not challenging those 4,500 claims. Even if some of those claims were similarly handled, examining the details of each does not change the result of the 550 cases where Continental is questioning whether the defendants breached their obligations. Only admissible evidence, or evidence likely to result in admissible evidence, is subject to discovery, Fed.R.Civ.P. 26(b)(1)-(2). Neither before the district court nor on appeal have the defendants presented any basis to show that evidence concerning the 4,500 uncontested loans is relevant. The district court therefore abused its discretion in compelling discovery related to those loans. *See, e.g., Food Lion, Inc. v. United Food & Commercial Workers Inter. Union,* 103 F.3d 1007, 1012–13 (D.C.Cir.1997) (district court abused its discretion in ordering discovery of irrelevant documents).

### B. Motions to Bar Expert Witness

Continental next challenges the district court's order barring its expert from testifying at trial. The defendants had moved to bar Continental's expert, arguing that Continental failed to comply with the discovery time-frame established in Fed. R.Civ.P. 26(a)(2)(C). Rule 26(a)(2)(C), which governs the disclosure of experts, provides:

These disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date that the case is to be ready for trial.

Fed.R.Civ.P. 26(a)(2)(C). The district court granted the defendants' motion to bar Continental's expert, reasoning that because it had established November 27 as the deadline for final pretrial orders, under Rule 26(a)(2)(C) Continental was required to disclose its expert's report at least 90 days earlier, or by August 27. Because Continental had not filed its expert report by that date, the district court barred Continental's expert.

On appeal, Continental claims that the district court erred in barring its expert report under Rule 26(a)(2)(C), and in denying Continental's motion to reconsider. We agree. Rule 26(a)(2)(C) explicitly provides that the 90–day deadline applies "[i]n the absence of other directions from the court, ..." and in this case the district court entered a minute order stating that the discovery cut-off date was October 31, 2001, "which includes experts." This provision constitutes "other directions from the court," and therefore the 90–day cut-off of Rule 26(a)(2)(C) does not apply. *See, e.g., Sherrod v. Lingle,* 223 F.3d 605, 612–13 (7th Cir.2000) (holding that a court order "setting a deadline for 'all discovery' constitutes 'other directions from the court'"). Rather, the discovery cut-off date of October 31 governs, and Continental satisfied that deadline by disclosing its expert on September 24, and producing its expert's report on October 9. While that may not have been the district court's intent,[6] Rule 26(a)(2)(C) is clear that the

---

6. In granting the defendants' motions to bar

Continental's expert, the district court stated

90–day time frame only applies in absence of other court orders, and given the district court's order in this case, we must conclude that the district court erred in barring Continental's expert witness from testifying.[7]

## C. Motions to Dismiss

After compelling Continental to respond to all of the defendants' discovery requests, including their requests for the information pertaining to the 4,500 additional loans, and after erroneously barring Continental's expert report, the district court granted the defendants' motions to dismiss Continental's complaint under Rule 37(b)(2)(C) as a sanction for discovery violations, and under Rule 41(b) for failure to prosecute. This court reviews the dismissal of a suit under Rules 37(b)(2)(C) and 41(b) for an abuse of discretion.[8] *Diehl v. H.J. Heinz Co.*, 901 F.2d 73, 73 (7th Cir.1990); *Casteel v. Pieschek*, 3 F.3d 1050, 1055 (7th Cir.1993). Dismissal under either rule is an extreme sanction and is thus permitted only in cases of "flagrant bad faith" or counsel's "callous disregard" of responsibilities. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (dismissal under Rule 37); *Casteel*, 3 F.3d at 1055 (dismissal under Rule 41(b) is appropriate only where there is "a clear record of delay or contumacious behavior or when other sanctions have proved unavailing").

To determine whether the district court abused its discretion in dismissing Continental's suit, we consider the district court's stated rationale for the dismissal. In justifying its decision, the district court first noted that Continental had refused to Bates-stamp documents or provide a document index. However, as explained above, Rule 33(d) does not require Bates-stamping, and the district court abused its discretion in focusing on the issue of Bates-stamping as opposed to whether the information contained in the spreadsheet sufficiently responded to interrogatories. The district court then focused on Continental's production of its expert report on October 8, 2001, noting that that was less than three weeks prior to the discovery cut-off. The court then reiterated that it had already barred Continental's expert for missing this deadline. However, as detailed above, the district court's order setting October 31, 2001 as the cut-off for discovery "including experts," overrode

---

"I said the discovery cutoff, meaning the deposition was to be taken by the certain date. Not disclosure." That may have been the district court's intent, but the order the court entered did not make that distinction.

**7.** Had Continental waited until the October 31, 2001 discovery deadline to disclose its expert report, we would be confronted with a more difficult question because that would leave the defendants without time to depose Continental's expert or to present conflicting expert testimony. However, in this case, Continental produced the expert's report on October 9, allowing the defendants about three weeks to review and respond to the report. Given that the parties had earlier agreed to a discovery schedule allowing only a ten-day turnaround from the time Continental disclosed its expert report to the time the

defendants' expert report was due, the defendants' claimed prejudice cannot justify ignoring the district court's order setting October 31, 2001 as the discovery cut-off "including experts."

**8.** Continental initially argues that the district court erred as a matter of law in dismissing its complaint under Rule 41(b), because "reliance on Rule 41, or on the court's inherent power, as authority for dismissal for failure to comply with a discovery order is improper since Rule 37 is the exclusive source of authority for dismissal on this ground." Appellant Brief at 47 (quoting 9 Federal Practice and Procedure § 2369). However, because the standard is basically the same and because we conclude that dismissal was inappropriate under either rule, we need not resolve this issue.

Rule 26(a)(2)(c)'s 90–day cut-off, and accordingly the district court erred in barring Continental's expert. Therefore, this rationale cannot support the district court's decision dismissing Continental's claim. *See, e.g., Dole v. Local 1942, International Brotherhood of Electrical Workers,* 870 F.2d 368, 372 (7th Cir.1989) (where district court abuses its discretion in formulating a discovery order, such an abuse of discretion will not support a Rule 37(b) dismissal). The district court also referred to Continental's failure to produce the 4,500 additional contracts. However, the record indicates that Continental in fact offered to produce those documents to the defendants, but that the defendants never responded to this offer. Moreover, and more significantly, as explained above, defendants did not present any basis to show that documents and discovery related to the 4,500 loans on which Continental did not sue were at all relevant and thus they were not subject to discovery. Therefore, that alleged deficiency cannot justify the harsh sanction of dismissal. The district court also found that Continental's amended discovery responses were untimely. While Continental disputes this, claiming that it had served the documents within the required time period, but that they were refused by the defendants' office building, we need not get caught up in that dispute, because the delay at most was a few days, and given that the order wrongfully mandated disclosure of information concerning the 4,500 loans–an overwhelming burden on Continental–in this case, that short delay cannot justify the extreme sanction of dismissal.

The remaining two justifications relied on by the district court concerned the propriety of Continental's responses to the defendants' discovery requests. The district court concluded that Continental had refused to specify the Policy provisions breached for half the contracts and to specify the dates for about 270 of the alleged breaches. The district court also noted that Continental produced no information relating to the underwriting standards allegedly breached or the provisions of the Policy breached for half the claims. However, contrary to the district court's conclusion, the record demonstrates that Continental provided a detailed narrative explaining the Policy breaches, and provided information regarding the procedures that Auto One failed to follow in underwriting the loans. Additionally, Continental's expert's report addressed many of these issues. For instance, Lazenby's report stated that Auto One did not follow its own loss prevention requirements on about 90 of the 550 loans, and that Chase and Auto One failed to engage in efforts to recover the vehicles on about 100 defaulting loans. While Continental acknowledged that it did not provide detailed information on the breaches related to approximately 24% of the loan contracts, Continental also explained that for those loans its investigation was continuing and that the discovery would be supplemented once the defendants completed their document production to Continental. However, the district court once again failed to consider the fact that Continental's ability to respond to discovery depended on the defendants fulfilling their own discovery duties. In order for Continental to respond fully to the interrogatories, it was required to review the defendants' loan files, and as it did so, Continental supplemented its discovery production, as it was required to do under Rule 26(e). Thus, this alleged deficiency also fails to support a finding of any discovery violation, much less one warranting dismissal as a sanction. Moreover, to the extent Continental fails to present any evidence of breaches, that omission is not an issue of a discovery violation, but rather may jus-

tify a grant of summary judgment on the merits.

The defendants point to several other discovery deficiencies to justify dismissal, such as Continental's failure to verify discovery. However, before the district court's hearing on the defendants' motions to dismiss, Continental had verified its discovery. While Continental may have dragged its feet, it eventually verified the request, and this delay did not harm the defendants in any appreciable way.

The defendants also point to Continental's failure to respond to Auto One's Interrogatory 11. Continental claims that this was an inadvertent mistake. We need not concern ourselves, however, with Continental's frame of mind because Interrogatory 11 requested a list of dates that each of the other 4,500 contracts was received by Continental, and as discussed above, that information was completely irrelevant to Continental's lawsuit and thus was non-discoverable.

■ In sum, this case was document-intensive and given the short discovery time frame established by the district court, the parties all faced difficulties in responding to discovery requests on a timely basis. The time crunch hit Continental hardest, however, because it had the burden of proof and as such faced detailed discovery requests concerning its theory of liability and damages. Yet responding to the discovery requests was not within Continental's sole control because it needed to review the defendants' documents before detailing the defendants' alleged breaches. To make matters worse, Continental was wrongly forced to respond to discovery requests concerning 4,500 irrelevant loans. While in the end there may have been some deficiencies in Continental's responses, most were minor, or were rectified through supplemental responses filed after Continental received the relevant discovery from the defen-

dants. Thus, while the district court's frustration over discovery problems is understandable, the harsh sanction of dismissal was not appropriate in this situation.

## III.

The district court abused its discretion in ordering Continental to respond to discovery concerning the 4,500 additional loans on which it did not sue. The district court also abused its discretion in compelling Continental to respond to discovery requests without considering whether the requested information was within Continental's possession. Additionally, the district court erred in barring Continental's expert from testifying because the district court had set an October 31 deadline "which included experts," and therefore the 90-day limitation of Rule 26(a)(2)(C) did not apply. Finally, the district court abused its discretion in dismissing Continental's complaint as a discovery sanction and for failure to prosecute, because the dismissal was premised in large part on the district court's earlier and erroneous discovery orders. For these and the foregoing reasons, we REVERSE and REMAND. Circuit Rule 36 shall apply on remand, and as the previously established deadlines have already passed, on remand the district court shall establish a new schedule and consider any remaining discovery issues in a matter consistent with this order.